Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

DELAWARE RIVER AND BAY AUTHORITY, Defendant.

Civ. A. No. 77–379.

United States District Court, D. Delaware.

May 11, 1979.

---

James W. Garvin, Jr., U. S. Atty., John X. Denney, Jr., Asst. U. S. Atty., Wilmington, Del., Carin Ann Clauss, Washington, D. C., Marshall H. Harris, and Joan M. Roller, U. S. Dept. of Labor, Philadelphia, Pa., Lois G. Williams and Joseph M. Woodward, U. S. Dept. of Labor, Washington, D. C., for plaintiff.

Francis S. Babiarz of Biondi & Babiarz, Wilmington, Del., for defendant.

## OPINION

STAPLETON, District Judge:

The plaintiff in this age discrimination action is Ray Marshall, the Secretary of the United States Department of Labor. The defendant is the Delaware River & Bay Authority ("the Authority"), an interstate agency created by a compact between the states of Delaware and New Jersey. The complaint alleges that the defendant has been discriminating against its employees and against applicants for employment on the basis of age since the end of 1974, in violation of Section 4(a)(1) of the Age Discrimination in Employment Act ("ADEA"),

29 U.S.C. § 623(a)(1), and Section 15 of the Fair Labor Standards Act, 29 U.S.C. § 215. The Secretary seeks a permanent injunction restraining the Authority from violating the Acts and requiring it to pay compensation to any individuals against whom it may be found to have discriminated, together with interest and costs.

The Authority has moved, pursuant to F.R.Civ.P. 12, to dismiss the complaint for failure to state a claim upon which relief may be granted and for "lack of jurisdiction" on two grounds: (1) that the Acts as applied to the Authority are an improper impairment of the Delaware-New Jersey compact that created it and (2) that the Acts cannot be applied to a governmental agency such as the Authority. It has also moved for summary judgment in its favor on the limited issue whether its mandatory retirement provisions violate Section 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1).

### I. FACTS.

The Delaware River & Bay Authority is an interstate authority established by a compact between the States of Delaware and New Jersey, which has been approved by Congress. The Authority operates a bridge crossing of the Delaware River near New Castle, Delaware, and a ferry crossing of the Delaware Bay between Cape May, New Jersey and Lewes, Delaware.

The Authority maintains a police force to patrol the bridges, their approaches and other Authority property. This force has the same legal authority as any other police in either state and has frequently made arrests and investigations for non-traffic offenses involving both felonies and misdemeanors. The Authority also employs other personnel involved in the operations and maintenance of its facilities.

The Authority maintains a pension plan for its employees. This pension plan was first initiated by the Authority in 1963. At that time, the normal retirement date for all employees was the later of age 65 or 10 years of continuous service. In 1967, the normal retirement age for police was lowered to age 60. On December 15, 1967, the

ADEA became law, but by its terms, it did not apply to state agencies. Pub.L. 90–202, 81 Stat. 602. On May 18, 1971, the Authority again amended its pension plan to lower the normal retirement age to the later of age 62 or 10 years of service for non-police personnel, and the later of age 57 or 10 years of service for its police. This last change was effective as of July 1, 1971. Effective May 1, 1974, the ADEA was amended so as to apply to state agencies. Pub.L. 93–259, § 28(a)(1), (2), (3) & (4).

Under the pension plan, an employee has no discretion as to whether to continue employment beyond his normal retirement age. The benefits to which employees are entitled under the pension plan have been paid to all eligible employees in accordance with the provisions of the Group Annuity Contract issued to the Authority.

### II. THE MOTION FOR SUMMARY JUDGMENT.

Section 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1), provides that:

It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. . . .

Section 631 provides:

The prohibitions in this chapter shall be limited to individuals who are at least forty years of age but less than sixty-five years of age.

As an exception to the general rule set out in Section 4(a)(1), Section 4(f)(2) provides in relevant part that:

It shall not be unlawful for an employer, employment agency, or labor organization—

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter. . . .

29 U.S.C. § 623(f)(2).

It is undisputed that the defendant's employee benefit plan is bona fide. The only

question requiring resolution is whether or not that plan is "a subterfuge to evade the purposes" of the ADEA within the meaning of the above section.

The United States Supreme Court, in *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1978), held that a bona fide retirement plan instituted in good faith 26 years prior to passage of the ADEA cannot be a "subterfuge to evade" the Act. Accordingly, the Court held that such retirement plans are within the Section 4(f)(2) exemption from the Act.

Following issuance of the opinion in the *McMann* case the following language was added to the end of Section 4(f)(2) effective April 6, 1978:

and no such . . . employee benefit plan shall require or permit the involuntary retirement of any individual . . because of the age of such individual.

Pub.L. 95–256. It is undisputed that the defendant has not involuntarily retired any individuals since the effective date of that amendment.

The Authority argues that *McMann, supra,* controls this case and that, under *McMann,* it is entitled to summary judgment on the ground that its retirement plan falls within the Section 4(f)(2) exemption. The secretary, on the other hand, contends that the 1978 amendment controls this case, citing *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). It is clear that, if the 1978 amendments apply to this case, the Authority's motion will have to be denied. It is equally clear that, if the 1978 amendments do not apply and *McMann* controls, the motion will have to be granted. Thus, it is necessary to determine whether the 1978 amendments are applicable to this case.

The question has been considered elsewhere, with differing results. The District of New Jersey has held that the 1978 amendments apply to pending litigation. *Davis v. Boy Scouts of America,* 457 F.Supp. 665 (D.N.J.1978). The Southern District of New York and the District of Maryland have come out the other way. *Marshall v. Atlantic Container Line,* 470 F.Supp. 71 (S.D.N.Y.1978); *Marshall v. B & O Railroad Company,* 461 F.Supp. 362 (D.Md.1978).

In *Bradley, supra,* the Court recognized "the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." 416 U.S. at 711, 94 S.Ct. at 2016. *See also Cort v. Ash,* 422 U.S. 66, 77, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *United States v. Schooner Peggy,* 5 U.S. 103, 110, 1 Cranch 103, 110, 2 L.Ed. 49 (1801); *Yakim v. Califano,* 587 F.2d 149 (3d Cir. 1978); *Cohen v. Maloney,* 428 F.Supp. 1278, 1283 (D.Del.1977). Assuming without deciding that it is appropriate to apply the *Bradley* principle to this case,[1] I conclude that there is legislative history requiring this Court to apply the 1978 amendments prospectively only and that "manifest injustice" would result if the 1978 amendments were applied to this case.

In addition to what he views as the presumption of retroactivity mandated by *Bradley,* the Secretary relies primarily upon those segments of the legislative history which indicate that the amendment to Section 4(f)(2) was designed to "clarify" that section by overturning *McMann* and reinstating a rule reflecting what the Ninety-Fifth Congress perceived to be the original intent of the Ninetieth Congress.[2] I do not

1. The defendant argues that *Bradley* applies only to changes in the law affecting procedural rights and not substantive rights, such as those involved here.

2. For instance, one report stated that the purpose of the amendment was to:

clarif[y] section 4(f)(2) . . . to make absolutely clear one of the original purposes of this provision, namely, that the exception does not authorize an employer to require or permit involuntary retirement . . . on account of age. . . .

H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess., 7–8, U.S.Code Cong. & Admin.News 1978, pp. 504, 529.

find those portions of the legislative history to be particularly helpful. Whatever may have been the view of the Ninety-Fifth Congress regarding the original intent behind the 1967 Act, it must have realized after the *McMann* decision that the ADEA and its legislative history were susceptible of the construction there placed upon them. In view of this fact, the policy decision whether to "clarify" retroactively or only for the future was clearly a debatable one and I do not believe one can infer one resolution or the other solely from the fact that a decision "to clarify" was made. *Accord United States v. Richardson,* 512 F.2d 105 (3d Cir. 1975).

There are, however, other parts of the legislative history of the 1978 amendments which indicate a Congressional choice in favor of prospective clarification only. Senator Williams, the floor and conference manager of the amendments, when asked a direct question about the effect of the amendments on a situation much like that before this Court, responded that they would have no effect:

> I should like to ask the Senator from New Jersey (Mr. Williams) whether this bill retroactively covers a forced retirement at age 60 or 62 prior to the effective date of this bill where the individual so retired is eligible for, and actually receives, a pension under a pension plan which has been qualified with the Internal Revenue Service.
>
> [Senator Williams responded]:
>
> The bill is not retroactive. The question of mandatory retirements prior to the effective date of this bill will be determined by the court's interpretation of existing law.

123 Cong.Rec. S17304 (daily ed. October 19, 1977).[3]

Similar views are reflected in the House and Senate Committee reports. The House Report includes a "table setting forth the dates when the bill *would prohibit mandatory retirement* on account of a seniority system or employee benefit plan." (Emphasis added). This table indicates that plans requiring mandatory retirement before age 65 would be prohibited "upon enactment."[4] Similarly the Senate Report includes a table "setting forth the dates when mandatory retirement provisions of a[n] . . . employee benefit plan *could no longer* be applied."[5] (Emphasis added).

I conclude that these and other segments[6] of the legislative history reflect a Congressional decision against retroactive

---

**3.** Senator Williams also observed:

> The conference agreement also clarifies the existing law to insure that pension plans or seniority systems which require mandatory retirement may *no longer be applied* to employees covered by the Act. . . . [R]aising the act's upper age limit would be meaningless if the Court's interpretation of § 4(f)(2) was allowed to stand. The conference agreement assures that this loophole in the present law will be closed. (Emphasis added).

**4.** The schedule included in the House Report is as follows:

> The table below sets forth the dates when the bill would prohibit mandatory retirement on account of a seniority system or employee benefit plan:

| | |
|---|---|
| Plans requiring mandatory retirement before age 65. | Upon enactment (unless already prohibited by U.S. Court decisions). |
| Plans requiring mandatory retirement at ages 65–69. | |
| Collectively bargained plans in effect 30 days prior to enactment. | 2 years after enactment, or at the expiration of negotiated agreements whichever comes first. |
| All other plans. | 181st day after enactment. |

H.R.Rep. No. 537, 95th Cong., 1st Sess. 9 (1977).

**5.** The schedule included in the Senate Report is as follows:

> The table below sets forth the dates when the mandatory retirement provisions of a seniority system or employee benefit plan could no longer be applied.
>
> Plans requiring mandatory retirement at ages 65 through 69: Collectively bargained plans in effect September 1, 1977: January 1, 1980, or at the expiration of negotiated agreements, whichever comes first.
>
> All other plans requiring mandatory retirement at ages 65 through 69: January 1, 1979.

S.Rep. No. 493, 95th Cong., 1st Sess. 11 (1977), U.S.Code Cong. & Admin.News 1978, pp. 504, 514.

**6.** *See* 123 Cong.Rec. S17304 (daily ed. Oct. 19, 1977).

application of the 1978 amendments to events which occurred prior to their passage. Even if this history were not available, however, the *Bradley* case would not dictate a different conclusion. Where Congressional intent remains unclear after an examination of the statute and its legislative history, *Bradley* dictates consideration of the nature and identity of the parties, the nature of their asserted rights, and the nature of the impact of the change in law upon those rights. The legislative act here in question directs itself to the relationship between employees and their employer. The right or expectation which the employer claims under the law as it existed on the date of the involuntary retirements is the kind of right or expectation which is reasonably relied upon in making primary decisions regarding human conduct beyond the Courthouse walls. Moreover, not only is the employer's expectation in this sense a substantive right, it is a substantive right that is relied upon in making planning decisions whose effects are long term. For these reasons, a retroactive change in the rules which the parties expected to govern their relationship would have a substantial impact on the employer's business and personnel practices not necessarily limited to the economic burden of backpay.

While acknowledging that employers rely on the term of employment discrimination and pension legislation in making long term planning decisions, the Secretary asserts that this defendant's reliance on Section 4(f)(2) was unjustified because, at the time of the involuntary retirements, there was a conflict in the case law about its meaning. I find this assertion unpersuasive. The Authority had a right to rely upon the statute and its construction of the statute was ultimately determined by the Supreme Court to be the correct one. What the Secretary is suggesting is that in any area subject to debate, one should resolve all doubts in favor of the construction least favorable to one's own interests. I find no such requirement.

Giving consideration to the nature of the rights involved and the substantial impact of retroactive application of the prohibition against pre-age 65 retirements, I consider it unlikely that Congress intended that retroactive effect be given to this portion of the 1978 amendments. *Cf. Weise v. Syracuse University,* 522 F.2d 397 (2d Cir. 1975).

### III. *THE MOTION TO DISMISS.*

■■■ The defendant argues that application of the ADEA to the defendant would violate the Tenth Amendment, relying on *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) and *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

In *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), the Court held that the 1974 amendments to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* which extended the minimum wage law and overtime provisions of the Act to almost all State employees, was an unconstitutional exercise of Congress' power under the commerce clause because it impinged on the States' freedom to carry out their own traditional governmental functions, in violation of the Tenth Amendment.

Each of the cases I have discovered discussing the application of the *National League of Cities* principle to the ADEA concluded that the Tenth Amendment does not preclude application of the Act to the States. *See Arritt v. Grisell,* 567 F.2d 1267 (4th Cir. 1977); *Remmick v. Barnes County,* 435 F.Supp. 914 (D.N.D.1977); *Usery v. Board of Education of Salt Lake City,* 421 F.Supp. 718 (D.Utah 1976); *Aaron v. Davis,* 424 F.Supp. 1238 (E.D.Ark.1976).

I agree with the Courts in *Arritt v. Grisell, supra,* and *Remmick, supra,* that the ADEA is authorized by Section 5 of the Fourteenth Amendment.[7] As noted by the

---

7. It is not clear from the legislative history that Congress intended to exercise Fourteenth Amendment power, *see* H.R.Rep. No. 805, 90th Cong., 1st Sess. (1967); S.Rep. No. 723, 90th Cong., 1st Sess., 13 (4 Nov.1967) (Individual Views of Senator Javits); Age Discrimination

Third Circuit in *Usery v. Allegheny County Institution District,* 544 F.2d 148, 155 (3d Cir. 1976), Congress' enforcement power under the Fourteenth Amendment, unlike its commerce clause power, is not limited by the Tenth Amendment.

[I]n *National League of Cities* the plurality opinion expressly disclaimed any intention of ruling upon the constitutionality of the exercise of Congressional authority against the States pursuant to § 5 of the Fourteenth Amendment. Four days later the Court unanimously sustained the exercise of such power in *Fitzpatrick · v. Bitzer,* 427 U.S. 445 [, 96 S.Ct. 2666, 49 L.Ed.2d 614] (1976).

*See also Ex parte Virginia,* 100 U.S. 339, 346–48, 10 Otto 339 (1879).

Nor is application of the ADEA to states barred by the Supreme Court's opinion in *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). In that case, the Court upheld against equal protection attack a provision of the Mass.Gen.Laws Ann. c. 32, § 26(3)(2) (1966), that a uniformed state police officer "shall be retired . . . upon his attaining age fifty." As the Court noted in *Aaron v. Davis, supra,* at 1241 n. 2, "[i]t is well settled that legislation authorized by section 5 of the Fourteenth Amendment can prohibit practices which might pass muster under the Equal Protection Clause, absent an Act of Congress." *See also Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 1723–1724, 16 L.Ed.2d 828 (1966), in which the Court stated:

Correctly viewed, § 5 is a positive grant of legislative power authorizing Congress to exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment.

Furthermore, even assuming that the ADEA were an exercise of commerce clause power necessitating a determination whether, under the test of *National League of Cities,* the Act impermissibly impinged on the States' exercise of their governmental autonomy in violation of the Tenth Amendment, the Authority has made no showing that application of the Act to the Authority causes the kind of substantial interference contemplated by *National League of Cities.* Absent such a showing, I cannot conclude that *National League of Cities* is a bar to the application of the Act to the Authority. *See Aaron v. Davis, supra.*

Finally, the defendant also argues that Congress' approval of the interstate compact which created the Authority precludes application of the Act to the Authority. The argument is unpersuasive.

Article VII e. of the Compact, 17 Del.C. § 1701, provides that the Authority shall have the power:

To appoint or employ such other officers, agents, attorneys, engineers, and employees as it may require for the performance of its duties and to fix and determine their qualifications, duties, compensation, pension, terms of office and all other conditions and terms of employment and retention.

Article VIII states that:

. . . no additional duties or obligations shall be undertaken by the Authority under the law of either State or *of Congress* without authorization by the law of both States.

(Emphasis added).

I do not read these compact provisions as requiring the conclusion pressed by the Authority that Congress, by approving them, forfeited its power to enforce the Fourteenth Amendment against the Authority.

in Employment: Hearings [Aug. 1–3, 15–17, 1967] on Age Discrimination Bill Before the Gen. Subcom. on Labor of the House Com. on Educ. and Labor, 90th Cong., 1st Sess. (23 Aug. 1967); Age Discrimination in Employment: Hearings [March 15–17, 1967] on Age Discrimination Bills Before the Subcom. on Labor of the

Senate Com. on Labor and Public Welfare, 90th Cong., 1st Sess. (26 April 1967), but the duty of this Court is to determine Congress' actual powers, and not its expression of the power on which it relied in acting. *See Usery v. Allegheny County Inst. Dist.,* 544 F.2d 148, 155 (3d Cir. 1976).

In fact, Congress evidenced a contrary intent when it approved the compact subject to the following proviso:

> [N]othing contained in such compact shall be construed as impairing or in any manner affecting any right or jurisdiction of the United States in and over the area which forms the subject of such compact.

Act of Sept. 20, 1962, Pub.Law 87–678, 76 Stat. 560 at 568. A proviso virtually identical to the one quoted above has been construed as a Congressional retention of the United States' powers over the parties to the compacts in question. *Cf. Petty v. Tennessee-Missouri Commission,* 359 U.S. 275, 281–82, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959). I conclude the same here. Even assuming, as the Authority argues, that the word "area" in the proviso refers to geographical area, Congress' powers are none the less preserved. Therefore, I conclude that application of the ADEA to the Authority in no way impairs the compact creating the Authority.

## CONCLUSION

Application of the ADEA to the Authority does not violate the Tenth Amendment or impair the interstate compact that created the Authority. Therefore, the Authority's motion to dismiss the complaint will be denied. However, because the Authority's past mandatory retirements fall within the bona fide retirement plan exemption of the ADEA then in effect, summary judgment will be granted for the Authority on that issue.