**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**PENNSYLVANIA LIQUOR CONTROL BOARD, Respondent.**

Civ. No. 80–1009.

United States District Court, M. D. Pennsylvania.

Dec. 2, 1980.

---

**1052**

John J. Lokos, E.E.O.C., Philadelphia, Pa., for plaintiff.

Patrick M. McHugh, Pa. Liquor Control Bd., Legal Division, Harrisburg, Pa., for respondent.

## MEMORANDUM

RAMBO, District Judge.

On August 11, 1980, plaintiff filed a petition requesting the court to issue an order to show cause why respondent should not be ordered to respond to a subpoena *duces tecum* issued by petitioner.[1] Plaintiff's request for enforcement is pursuant to 15 U.S.C. § 49, ¶ 3. Respondent filed a brief in opposition to plaintiff's request for an order to show cause on September 2, 1980. Oral argument on the matter was held on September 11, 1980.[2]

Respondent's mandatory retirement policy requires retirement of only Enforcement Officers of the Pennsylvania Liquor Control Board at age 65 or attainment of 15 years of service, whichever occurs later. Section 623(a) of the Age Discrimination in Employment Act (ADEA) reads in pertinent part:

> (a) Employer Practices. It shall be unlawful for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; ...

Section 631, as amended, reads in pertinent part:

> (a) The prohibitions in this Act [29 U.S.C.S. §§ 621 et seq.] shall be limited to individuals who are at least 40 years of age but less than 70 years of age.

Plaintiff contends that since respondent's mandatory retirement policy prevents individuals over the age of 65 from working, respondent's retirement policy discriminates against individuals between the ages of 65 and 70, in violation of the ADEA.

Respondent counters plaintiff's position by asserting that the ADEA of 1967, as amended, 29 U.S.C. §§ 621 et seq., was passed pursuant to Congress's power under the Commerce Clause; that as such, it is subject to the restrictions imposed by the Tenth Amendment; and that granting an order to show cause would constitute an abuse of the court's process. Both respondent and plaintiff rely on *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), in support of their respective positions.

---

1. The subpoena *duces tecum* served on respondent by registered mail on June 18, 1980, was issued by Johnny J. Butler, Director of the Philadelphia Office of EEOC, on June 12, 1980.

2. At the hearing, both plaintiff and respondent were requested to point to *specific* language in the legislative history of ADEA, or its amendments, that would indicate whether Congress was exercising its power under the Commerce Clause or § 5 of the Fourteenth Amendment. Neither plaintiff or respondent has successfully complied with that request.

In *League of Cities*, the Court issued a very carefully worded opinion on a very narrow issue. This court is of the opinion that respondent has incorrectly interpreted the Court's message in *League of Cities*, particularly in light of the Court's findings in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). The essence of the Court's holding in *League of Cities* is that federal legislation, which is based *solely* upon the Congress's power to regulate commerce and directly displaces the state's ability to structure employee–employer relationships in areas of traditional governmental functions, is beyond the authority granted Congress by the Commerce Clause and therefore constitutes an impermissible intrusion of states rights. In a footnote, the Court cautioned that it expressed

> no view as to whether different results might obtain if Congress seeks to affect integral operations of state governments by exercising authority granted it under other sections of the Constitution such as the spending power, Art. I, § 8, cl. 1, or § 5 of the Fourteenth Amendment. *League of Cities, supra* 426 U.S. at 852, n. 17, 96 S.Ct. at 2474, n. 17.

In *Fitzpatrick*, which was decided only four days after *League of Cities*, the Court found that Congress, in determining what legislation is appropriate to enforce the Fourteenth Amendment, may provide for suits against states that are constitutionally impermissible under other circumstances. While *Fitzpatrick* dealt with the federal government's right to infringe upon the state's rights protected by the Eleventh Amendment, it is reasonable to assume a similar result would have been reached if the legislation infringed upon the Tenth Amendment, particularly in light of the language used in *League of Cities*. The message was clear, if the federal legislation is properly founded on § 5 of the Fourteenth Amendment, it may reasonably infringe upon state's rights protected by other constitutional amendments.

The threshold question in this case, therefore, is whether the ADEA is based upon Congress's power under the Commerce Clause or § 5 of the Fourteenth Amendment. While it is not clear from the legislative history nor the act itself that Congress intended to exercise its Fourteenth Amendment power in passing the ADEA, *Marshall v. Delaware River and Bay Authority*, 471 F.Supp. 886, 891 n. 7 (D.Del. 1979), courts have uniformly come to that conclusion for a myriad of reasons. *Marshall, supra; Remmick v. Barnes County*, 435 F.Supp. 914 (D.N.D.1977); *Aaron v. Davis*, 424 F.Supp. 1238, 1241 n. 2 (E.D.Ark. 1976); *Usery v. Board of Education of Salt Lake*, 421 F.Supp. 718, 721 (D.Utah 1976). Further, the Supreme Court has already held that a section of the ADEA should be construed in the same manner as its counterpart in Title VII, which is based on the Fourteenth Amendment, because

> the ADEA and Title VII share a common purpose, the elimination of discrimination in the workplace; . . . the language of § 14(b) is almost in haec verba with § 706(c), and since the legislative history of § 14(b) indicates that its source was § 706(c). . . . [3] *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979).

Aside from that, the Third Circuit Court of Appeals has declared that "In exercising the power of judicial review, as distinguished from the duty of statutory interpretation, we are concerned with the actual powers of the national government.[4] *Usery v. Allegheny County Institution District*, 544 F.2d 148, 155 (3rd Cir. 1976). It is clear beyond all doubt that Congress has the power, under § 5 of the Fourteenth Amendment, to legislate to eliminate the effects of age discrimination.

---

**3.** Section 14(b) refers to the ADEA and § 706(c) refers to Title VII.

**4.** In *Usery, supra*, the court was dealing with the Equal Pay Act, which added a sex discrimination provision to the Fair Labor Standards Act. Likewise, the ADEA added an age discrimination provision to the FLSA. To that extent, *Usery* is applicable to the instant case.

In this particular situation, however, the court is confronted with an additional twist, in that since the Enforcement Officers of the Respondent deal primarily with intoxicating beverages, including their use, consumption and transportation, the effects of the Twenty–first Amendment must be considered.[5] It has long been recognized that the Twenty–first Amendment broadened the power of the States to regulate intoxicants, to the point where the State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation, use, distribution or consumption within its borders. *United States v. State Tax Commission*, 412 U.S. 363, 93 S.Ct. 2183, 37 L.Ed.2d 1 (1973); *Heublein, Inc. v. South Carolina Tax Commission*, 409 U.S. 275, 93 S.Ct. 483, 34 L.Ed.2d 472 (1972). However, the same is not true when applied to federal legislation not predicated upon the Commerce Clause.

The Supreme Court in *Craig v. Boren*, 429 U.S. 190, 206, 97 S.Ct. 451, 461, 50 L.Ed.2d 397 (1976) noted the interplay between the Twenty–first Amendment and other constitutional provisions.

Once passing beyond consideration of the Commerce Clause, the relevance of the Twenty–first Amendment to other constitutional provisions becomes increasingly doubtful. As one commentator has remarked: "Neither the text nor the history of the Twenty–first Amendment suggests that it qualifies individual rights protected by the Bill of Rights and the Fourteenth Amendment where the sale or use of liquor is concerned." P. Brest, Processes of Constitutional Decisionmaking, Cases and Materials, 258 (1975). Any departures from this historical view have been limited and sporadic. Two States successfully relied upon the Twenty–first Amendment to respond to challenges of major liquor importers to state authority to regulate the importation and manufacture of alcoholic beverages on Commerce Clause and Fourteenth Amendment grounds. See *Mahoney v. Joseph Triner*

*Corp.*, 304 U.S. 401, [58 S.Ct. 952, 82 L.Ed. 1424] (1938); *State Board v. Young's Market Co.*, 299 U.S. 59, 64 [57 S.Ct. 77, 79, 81 L.Ed. 38] (1936). In fact, however, the arguments in both cases centered upon importation of intoxicants, a regulatory area where the State's authority under the Twenty–first Amendment is transparently clear, *Hostetter v. Idlewild Bon Voyage Liquor Corp., supra*, [377 U.S. 324], at 330, and n. 9, [84 S.Ct. 1293, at 1297, and n. 9, 12 L.Ed.2d 350] and touched upon purely economic matters that traditionally merit only the mildest review under the Fourteenth Amendment, see, e. g., *Joseph E. Seagram & Sons v. Hostetter*, 384 U.S. 35, 47–48, 50–51 [86 S.Ct. 1254, 1262–1264, 16 L.Ed.2d 336] (1966) (rejecting Fourteenth Amendment objections to state liquor laws on the strength of *Ferguson v. Skrupa*, 372 U.S. 726, 729–730 [83 S.Ct. 1028, 1030–1031, 10 L.Ed.2d 93] (1963) and *Williamson v. Lee Optical Co.*, 348 U.S. 483 [75 S.Ct. 461, 99 L.Ed. 563] (1955)). Cases involving individual rights protected by the Due Process Clause have been treated in sharp contrast. For example, when an individual objected to the mandatory "posting" of her name in retail liquor establishments and her characterization as an "excessive drink[er]," the Twenty–first Amendment was held not to qualify the scope of her due process rights. *Wisconsin v. Constantineau*, 400 U.S. 433, 436 [91 S.Ct. 507, 509, 27 L.Ed.2d 515] (1971).

It is true that *California v. LaRue*, 409 U.S. 109, 115 [93 S.Ct. 390, 395, 34 L.Ed.2d 342] (1972), relied upon the Twenty–first Amendment to "strengthen" the State's authority to regulate live entertainment at establishments licensed to dispense liquor, at least when the performances "partake more of gross sexuality than of communication," *id.*, at 118. Nevertheless, the Court has never recognized sufficient "strength" in the Amendment to defeat an otherwise established claim of invidious discrimination in violation of the Equal Protection Clause. *Id.* (footnote omitted).

---

**5.** While neither plaintiff nor respondent addressed this issue, the court felt that it could not be ignored in the proper disposition of this case.

Since the court has determined that the ADEA apparently is based upon Congress's power under § 5 of the Fourteenth Amendment and not the Commerce Clause, the application of the ADEA to state and local governments is not restricted by the Twenty–first Amendment.

Accordingly, an order directing respondent to respond to plaintiff's *subpoena duces tecum* will be entered.[6]

**6.** In *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), the Court held that before a complaint could be filed with the EEOC , a grievant must first commence a proceeding with the appropriate state agency. Under the Pennsylvania Human Relations Act, 43 P.S. §§ 951 et seq., only individuals between the ages of 40 and 62 inclusive are covered. Hence, the rule in *Oscar Mayer* is inapplicable in the instant case, regardless of whether or not the claimant filed a state claim prior to the federal claim. The record does not disclose that information.