A. Clay AARON, Jr. and Fletcher A. Wynn, Plaintiffs,

v.

Chief Jack DAVIS et al., Defendants,

John J. Uekman, and International Association of Firefighters, Local 34, Intervenors.

No. LR–76–C–16.

United States District Court, E. D. Arkansas, W. D.

Dec. 9, 1976.

### MEMORANDUM AND ORDER

EISELE, Chief Judge.

Pending before the Court is the motion of intervenors John J. Uekman and the International Association of Firefighters, Local 34, for reconsideration of this Court's May 28, 1976, Memorandum opinion, which held that Section 13–11 of the Ordinances of the City of Little Rock, Arkansas, the Ordinance which provides for the mandatory retirement of all Little Rock firemen at age 62, is in conflict with the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* Plaintiffs, A. Clay Aaron, Jr. and Fletcher A. Wynn, have filed their response to the motion for reconsideration, and the Secretary of Labor, as Amicus Curiae, has filed a brief in partial opposition to the motion for reconsideration.

Intervenors move that the May 28, 1976, Memorandum be set aside on three grounds: first, that the Age Discrimination Act of 1967 is unconstitutional as it applies to the traditional governmental functions of state and local governments, such as fire departments; second, that 29 U.S.C. § 623(f)(2) states a defense to the enforcement of the Age Discrimination Act as applied to the Little Rock Fire Department; and, third, that the Court erred in its selection of standards for determination of bona fide occupation qualifications.

### THE CONSTITUTIONALITY OF THE AGE DISCRIMINATION ACT OF 1967, AS AMENDED

Intervenors rely on *National League of Cities, et al. v. W. J. Usery, Jr.,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), for their argument that the Age Discrimination Act is unconstitutional as applied to the Little Rock Fire Department. In that case the Court held that the 1974 Amendments to the Fair Labor Standards Act, which extended minimum wage and hour provisions to most state and local government employees, are not within the authority granted Congress by the Commerce Clause. Intervenors argue that *National League of Cities* stands for the proposition that:

> "Congress may not exercise its power to regulate commerce so as to force directly upon the States its choices as to how essential decisions regarding the conduct of integral governmental functions are to be made. Since the Age Discrimination Act is similarly rooted in the Commerce Clause, and depends for its enforcement on the FLSA, it too cannot be applied to municipalities."

(Intervenors' Motion for Reconsideration, p. 2.)

In *National League of Cities,* the Court addressed the practical problems of state and local governments resulting directly from the 1974 amendments to the Fair Labor Standards Act that extended minimum wage and hour laws to state and local governments.[1] The Court concluded that

---

1. The Court noted that:

   "Judged solely in terms of increased costs in dollars, these allegations show a significant impact on the functioning of the governmental bodies involved. The Metropolitan Government of Nashville and Davidson County, Tenn., for example, asserted that the Act will increase its costs of providing essential police and fire protection, without any increase in service or in current salary levels, by $938,000 per year. Cape Girardeau, Mo., estimated that its annual budget for fire protection may have to be increased by anywhere from $250,000 to $400,000 over the current figure of $350,000. The State of Arizona alleged that the annual additional expenditures which will be required if it

although as a matter of economic policy it may be desirable that state and local governments, just as private employers, comply with federal minimum wage and hour laws, these laws supplant the policy choices of the state's elected officials and administrators as to how best to allocate the state's financial resources to pay for fire prevention, police protection, sanitation, public health, parks, recreation, and other activities performed by state and local governments in discharging their dual functions of administering the public law and furnishing public services. The Court notes that under the Fair Labor Standards Act the state has no discretion to make imaginative and innovative uses of financial resources to get the most for each dollar spent to maintain the public health and welfare:

"Quite apart from the substantial costs imposed upon the States and their political subdivisions, the Act displaces state policies regarding the manner in which they will structure delivery of those governmental services which their citizens require. . . . The State might wish to employ persons with little or no training, or those who wish to work on a casual basis, or those who for some other reason do not possess minimum employment requirements, and pay them less than the federally prescribed minimum wage. It may wish to offer part time or summer employment to teenagers at a figure less than the minimum wage, and if unable to do so may decline to offer such employment at all. But the Act would forbid such choices by the States. The only 'discretion' left to them under the Act is either to attempt to increase their revenue to meet the additional financial burden imposed upon them by paying congressionally prescribed wages to their existing complement of employees, or to reduce that complement to a number which can be paid the federal minimum wage without increasing revenue."

426 U.S. 833, at 847, 96 S.Ct. 2465, at 2472, 49 L.Ed.2d 245.

Intervenors argue that the Age Discrimination Act similarly burdens the state's discretion to allocate its resources. Intervenors state:

"Both provisions [the Fair Labor Standards Act and the Age Discrimination Act] 'significantly alter or displace the State's abilities to structure employer-

---

is to continue to provide essential state services may total $2½ million dollars. The State of California, which must devote significant portions of its budget to fire suppression endeavors, estimated that application of the Act to its employment practices will necessitate an increase in its budget of between $8 million and $16 million.

"Increased costs are not, of course, the only adverse effects which compliance with the Act will visit upon state and local governments, and in turn upon the citizens who depend upon those governments. In its complaint in intervention, for example, California asserted that it could not comply with the overtime costs (approximately $750,000 per year) which the Act required to be paid to California Highway Patrol cadets during their academy training program. California reported that it had thus been forced to reduce its academy training program from 2,080 hours to only 960 hours, a compromise undoubtedly of substantial importance to those whose safety and welfare may depend upon the preparedness of the California Highway Patrol.

"This type of forced relinquishment of important governmental activities is further reflected in the complaint's allegation that the City of Inglewood, California, has been forced to curtail its affirmative action program for providing employment opportunities for men and women interested in a career in law enforcement. The Inglewood police department has abolished a program for police trainees who split their week between on the job training and the classroom. The city could not abrogate its contractual obligations to these trainees, and it concluded that compliance with the Act in these circumstances was too financially burdensome to permit continuance of the classroom program. The City of Clovis, Cal., has been put to a similar choice regarding an internship program it was running in cooperation with a California State University. According to the complaint, because the interns' compensation brings them within the purview of the Act the city must decide whether to eliminate the program entirely or to substantially reduce its beneficial aspects by doing away with any pay for the interns."

426 U.S. 833, at 846, 847, 96 S.Ct. 2465, at 2471, 2472, 49 L.Ed.2d 245.

employee relationships in such areas as fire prevention'. Both provisions infringe upon States' 'separate and independent existence' and impair States' 'ability to function effectively within a federal system'. Both provisions 'directly displace the States' freedom to structure integral operations in areas of traditional governmental functions.'"

(Intervenors' Brief in Support of Motion for Reconsideration, p. 3.)

■■■■ It is the opinion of the Court that although the Age Discrimination Act does alter the state's ability to structure employer-employee relationships by forbidding the states to discriminate between employees on the basis of age, that alteration does not significantly interfere with the policy choices of the state's elected officials and administrators as to how best to allocate the state's financial resources in discharging the state's primary function (within the framework of the Constitution) of administering the public law and maintaining the public health and welfare. Furthermore, there is no evidence before this Court from which to conclude that the Age Discrimination Act significantly alters the manner in which the City of Little Rock allocates its financial resources to provide its citizens with fire protection. There is absolutely no basis for this Court to conclude that the very separate and independent existence of the states' ability to function effectively within the federal system is endangered by a law which prohibits the City of Little Rock from discriminating between firemen age 62 and firemen age 65 without an empirical justification for doing so.

■■■■ Furthermore, while the application of the Age Discrimination Act requires that states practice a policy of non-discrimination between employees on the basis of age,

the Act will require no greater alteration or displacement of the state's abilities to structure employer-employee relationships and deliver essential governmental services than does Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* See *Fitzpatrick v. Bitzner,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). The Age Discrimination Act, as Title VII, is plainly appropriate legislation to enforce equal protection against state action which discriminates on the basis of age.[2]

## 29 U.S.C. § 623(f)(2) AS A DEFENSE TO THE ENFORCEMENT OF THE AGE DISCRIMINATION ACT AS APPLIED TO THE LITTLE ROCK FIRE DEPARTMENT

In their motion for reconsideration, intervenors raise 29 U.S.C. § 623(f)(2) as a defense to the enforcement of the Age Discrimination Act. This defense has not previously been raised, and the Court finds that it is untimely.

■■■■ Furthermore, the argument is without merit. 29 U.S.C. § 623(f)(2) provides:

"It shall not be unlawful for an employer . . . (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purpose of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual; . . .."

Intervenors argue that:

"Section 13–11 of the Ordinances of the City of Little Rock providing for a mandatory retirement age of 62 for firefighters effectively amends and amplifies the terms of the existing State-operated pension plan, bringing it within the exemp-

---

**2.** The Court's decision in *Massachusetts Board of Retirement, et al. v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), is not to the contrary. In that case, the Court did not address the question of the Age Discrimination Act, but held only that the Fourteenth Amendment, without any enforcing legislation, did not bar a state law requiring mandatory retirement for some state employees at age 50 since such a

law, when tested under the rational basis standard, was not unreasonable in view of the fact that physical fitness generally declines with age. It is well settled that legislation authorized by section 5 of the Fourteenth Amendment can prohibit practices which might pass muster under the Equal Protection Clause, absent an Act of Congress.

tion set out above. The pension plan itself assumes an effective retirement age of 56 years, since benefits stop accumulating after 25 years of employment and no person over 31 years of age may be hired as a Little Rock fireman . . . ."

(Intervenor's Motion for Reconsideration, p. 2.)

Section 13–11 of the Ordinances of the City of Little Rock does not create an employee benefit plan within the scope of 29 U.S.C. § 623(f)(2). The Firemen's Retirement Act, Ark.Stat.Ann. § 19–2201, et seq., makes no mention of a required age for retirement. The sole purpose of the act is to set up monetary benefits for firemen when they retire voluntarily. The City of Little Rock cannot turn the State of Arkansas's voluntary retirement plan into an employee benefit plan within the meaning of 29 U.S.C. § 623(f)(2) by merely passing a city ordinance requiring firemen to retire at age 62.

### THE STANDARD APPLIED BY THE COURT TO DETERMINE WHETHER AGE IS A BONA FIDE OCCUPATIONAL QUALIFICATION

Intervenors argue that:

"The Court erred in its selection of standards for determination of bona fide occupational qualifications and misconstrued the evidence on record. The proper standard for bona fide occupational qualifications where the safety of the parties is involved is one of rationality. *Hodgson v. Greyhound Lines, Inc.* [499 F.2d 859] (7th Cir. 1974). This view was recently reiterated by the Supreme Court in an equal protection context. In *Massachusetts Board of Retirement v. Robert O. Murgia* [427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520] (June 25, 1976), the Court refused to apply strict scrutiny to age classifications, instead invoking the deferential standard of rationality. The Court stated that the drawing of lines is peculiarly a legislative task and 'such action by a legislature is presumed to be valid.' [427 U.S. 307, ——, 96 S.Ct. 2562, 2566,

49 L.Ed.2d 520]. Moreover, 'perfection is neither possible nor necessary.' [427 U.S. 307, ——, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520]. The Court held that age classifications need only be rationally related to legitimate state purposes even if the particular line drawn is not the *best* means for protecting the public. As a result, individualized testing is not required. This Court should look to the standards announced in *Murgia* to make its determination under the Age Discrimination Act of 1967 . . . ."

It is the opinion of the Court that the *Murgia* decision does not set forth the standard to be applied for determination of bona fide occupational qualifications under the Age Discrimination Act. The *Murgia* case did not arise under the Age Discrimination Act, but under the Equal Protection Clause of the Fourteenth Amendment. See footnote 2, *supra.*

Accordingly, it is hereby ordered that intervenors' motion for reconsideration be, and it is hereby, denied.