514 F.Supp. 595 (1981)
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,
v.
The STATE OF WYOMING, et al., Defendants.
No. C80-0336B.
United States District Court, D. Wyoming.
May 22, 1981.
Francis Leland Pico, Asst. U. S. Atty., D. Wyoming, Cheyenne, Wyo., and Lawrence D. Stone, Denver, Colo., for plaintiff.
Bruce A. Salzburg, Senior Asst. Atty. Gen., Cheyenne, Wyo., for defendants.

MEMORANDUM OPINION
BRIMMER, District Judge.
The Equal Employment Opportunity Commission, as an agency of the United States (herein "EEOC"), sued the State of Wyoming, its Governor, and the members and directors of the Wyoming Game and Fish Commission, both as individuals and in their official capacities, the Director of the State of Wyoming Game and Fish Department, as an individual and officially, and the State of Wyoming Retirement System, *596 on behalf of Bill Crump and others similarly situated, as a result of Crump's mandatory retirement at the age of fifty-five (55) years from his position of District Game Division Supervisor of the Wyoming Game and Fish Department. Its complaint alleges willful engagement by each of the Defendants in unlawful employment practices in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. (herein referred to as "ADEA"), in that (a) Wyoming Statute § 31-3-107, entitled the Wyoming State Highway Patrol and Fish Retirement Act, invalidly and contrary to ADEA permits mandatory retirement of a game warden at 55 years, (b) Crump was mandatorily retired at age 55, and (c) the policy of retiring game wardens at age 55 and other employees at age 65 is discriminatory and adversely affects numerous employees of the Wyoming Game and Fish Department. The Defendants moved to dismiss the complaint for failure to state a claim because: (1) ADEA cannot apply to a State's system for retirement of law enforcement personnel under the Tenth Amendment to the United States Constitution, citing National League of Cities v. Usery, 426 U.S. 833, 49 L.Ed.2d 245, 96 S.Ct. 2465 (1976); and (2) ADEA, even if passed under the Fourteenth Amendment, cannot apply here where there is no impermissible violation of that amendment's equal protection provisions.
The EEOC's prayer asked for injunctive and declaratory relief, and for reinstatement of Crump and sought "appropriate back wages and an equal sum as liquidated damages, in amounts to be proved at trial, to persons adversely affected by the unlawful employment practices ... including Bill Crump and others similarly situated." No certification of the suit as a class action has yet been asked.
The naming of the Defendants in their individual capacities as well as officially disturbs the Court. EEOC has sued 9 citizens of this State as individuals for damages. It used the barest notice pleading, alleging only willful engagement by each of the Defendants in "unlawful employment practices." It affronts this Court's sense of justice and fair play that a federal agency should attack as individuals, the Governor of Wyoming, and the Wyoming citizens who serve this State in a public-spirited capacity without pay as State Game and Fish Commission members, and attempt to extract an unspecified amount of damages from them without so much as a single specific allegation, statement or showing that they as individuals have acted with malice, or in bad faith, or have in some way abused their offices so as to subject them to individual liability. The Defendants, as Governor, Director, and Commission members, are entitled to a qualified privilege or immunity from suit as individuals. Smith v. Losee, 485 F.2d 334 (10th Cir., 1973). The EEOC complaint clearly has failed to state a cause of action against the Defendants as individuals. "The task of protecting the individual against the aggressions of government," as Prof. Archibald Cox has termed it,[1] falls to this Court and the Court therefore dismisses this action, sua sponte, against the Defendants as individuals.
The claims against the Defendants in their official capacity are in fact claims against the State of Wyoming. Williams v. Eaton, 443 F.2d 422, 428 (10th Cir., 1971), Smyth v. Ames, 169 U.S. 466, 518, 18 S.Ct. 418, 422, 42 L.Ed. 819, and the Defendants will hereafter be referred to collectively as the State of Wyoming or the State. In defense of this action the State contends that EEOC's claims against the State are based on an Act of Congress (the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.) passed under the Commerce Clause power of Congress, and are therefore an impermissible interference under the Tenth Amendment with the State of Wyoming under the authority of National League of Cities v. Usery, 426 U.S. 833, 96 *597 S.Ct. 2465, 49 L.Ed.2d 245 (1976). EEOC in reply contends that National League of Cities v. Usery, supra, merely struck down the minimum wage and overtime provisions of the Fair Labor Standards Act and did not affect the ADEA. It urges also that the extension of ADEA to State employees was a valid exercise of Congressional power under the Commerce Clause because the State's ability to establish age 55 for retirement of some of its employees in law enforcement work is not an attribute of its sovereignty, and finally that the Fourteenth Amendment provides a source of Congressional power supporting ADEA's application to the States.
A basic inconsistency in the United States' position is unusually striking. In the very recent case of Thomas v. U. S. Postal Inspection Service, 647 F.2d 1035 (10th Cir. 1981) the Court of Appeals confirmed that the Postal Service, ADEA notwithstanding, could fix minimum and maximum ages within which law enforcement officers may be employed. It relied upon the case of Vance v. Bradley, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979) which held that a requirement of retirement of Foreign Service personnel at age 60 was not violative of Fifth Amendment equal protection. Judge Pickett in Thomas, supra, also pointed out that, "In 1974, Congress, recognizing the hazardous nature of the work of law-enforcement officers and others, amended the retirement provisions relating to such employment. P.L. 93-350, 1 U.S. Cong. & Adm.News 1974, 395. This Act requires retirement at the age of fifty-five years. 5 U.S.C. § 8335(b)." Thus, the United States Postal Service, the United States Foreign Service, as well as its law enforcement agencies ignore the provisions of ADEA, but the United States, through its EEOC, won't allow the law enforcement agencies of one of its sovereign States also to be immune from ADEA. In one breath Congress in 1974 required federal law enforcement men to retire at 55 years, but in a second breath Congress in 1974 extended ADEA coverage to the States; thus, the United States tells the State and its law enforcement agencies to do as the United States says, but not as it does.
The Supreme Court in Massachusetts Board of Retirement et al. v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), has held that a Massachusetts statute mandating retirement of a state police officer at 50 years rationally furthered its purpose of assuring the physical fitness of its state police officers. It said,
"This Court's decisions give no support to the proposition that a right of governmental employment per se is fundamental... Accordingly, we have expressly stated that a standard less than strict scrutiny `has consistently been applied to state legislation restricting the availability of employment opportunities' ..."
The Court went on to hold that "... the Massachusetts statute clearly meets the requirements of the Equal Protection Clause." This Court assumes that the Wyoming statutes in question would similarly withstand challenge on Equal Protection grounds. Applicability of ADEA was not considered in Murgia, supra.
The Wyoming State Highway Patrol and Game and Fish Warden Retirement Act, § 31-3-101, W.S. 1977, et seq., allows retirement of fulltime law enforcement officers of the Wyoming State Game and Fish Department and Wyoming Highway Patrolmen at age 55 and requires retirement at age 65. § 31-3-107(c) and (d), W.S., 1977. Wyoming Game and Fish wardens are law enforcement officers, § 9-3-1901(a)(vii) and § 7-2-101, W.S.1977, and are authorized to make arrests and enforce criminal violations of Wyoming game and fish laws. § 23-6-101, W.S., 1977. The State's answers to interrogatories filed herein show that the Wyoming Game and Fish Commission on November 3, 1977 adopted a policy of mandatory retirement at age 55, unless the employee served in an administrative function. The Table of Organization of the Game Division of the State Game and Fish Department shows 7 district supervisors, each in direct charge of the game wardens under them. The Court must conclude that Mr. Crump is a law enforcement officer of the State of Wyoming, and not a mere administrative employee.
*598 That the Supreme Court's holding in National League of Cities v. Usery, supra, is not narrowly limited to the minimum wage and hour provision of the Fair Labor Standards Act (FLSA), which it struck down, is readily apparent. A thoughtful reading of the case as well as the furor in academic circles created by the decision discloses that. Surely a case first attacked by Justice Brennan in his vigorous dissent as "an abstraction without substance" (426 U.S. at 860, 96 S.Ct. at 2478), then characterized as a "vestigal expression of states' rights philosophy,"[2] and as "the tip of the tenth amendment iceberg" by another,[3] and "ominous" and "outrageous" by yet another,[4] and as "a retreat from the vigorous defense of liberty and equality" by Professor Tribe of Harvard,[5] has greater impact than a ban on Congressional interference with wages and hours of State employees working in traditional State activities. The decision's language and argument are cast in broader terms.
In National League of Cities v. Usery, supra, Justice Rehnquist, writing for a five to four majority, held that the 1974 FLSA Amendments which broadened the coverage of the FLSA to encompass employees of a State or a political division thereof were an attempt by Congress "to exercise its Commerce Clause authority to prescribe minimum wages and maximum hours to be paid by the States in their capacities as sovereign governments," and said,
"In so doing, Congress has sought to wield its power in a fashion that would impair the States' `ability to function effectively in a federal system'. Fry [v. U. S.], 421 U.S. [542] at 547, n. 7 [95 S.Ct. 1792, at 1795, 44 L.Ed.2d 363] ... We hold that insofar as the challenged amendments operate to directly displace the States' freedom to structure integral operations in areas of traditional government functions, they are not within the authority granted Congress ...",
under the Commerce Clause. He concluded that the FLSA amendments operated directly on "the States qua States" but that "particularized assessments of actual impacts" are not crucial to resolution of the issue, that "there are limits upon the power of Congress to override state sovereignty," rejected and overruled the reasoning of Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968) and its "far-reaching implications" as "no longer authoritative". He concluded that where the States exercise "integral governmental functions" that provides services "which the States and their political subdivisions have traditionally afforded their citizens," the Tenth Amendment was a "constitutional barrier" and limitation upon Congress' power to regulate commerce. One writer concluded, as do we,
"The broad invalidation of the Amendments without a specific analysis of their actual impact suggests that National League has potentially sweeping implications with respect to all aspects of the FLSA as applied to the States," 10 Univ. of Michigan Journal of Law Reform, 239 at 248.
It is sheer ostrichism to say the National League of Cities merely struck down the wage-hour provisions of FLSA without affecting ADEA.
Nor is there any gainsaying the fact that ADEA was passed by Congress under the Commerce Clause, rather than the Fourteenth Amendment. Despite the holdings of our learned brothers in Arritt v. Grisell, 567 F.2d 1267 at 1271 (4th Cir., 1977), Aaron v. Davis, 424 F.Supp. 1238 at 1241 (E.D.Ark., 1976), and Usery v. Board of Education of Salt Lake City, 421 F.Supp. 718 (D.Utah, 1976), and other similar cases, the legislative history of the ADEA clearly *599 shows that in enacting the ADEA, and in extending it to the states, Congress was acting under the Commerce Clause and not under § 5 of the Fourteenth Amendment.
The Fair Labor Standards Act of 1938 was enacted under the Commerce Clause. U. S. v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941). Its coverage was extended in 1961 by P.L. 87-30, 75 Stat. 65, 29 U.S.C. § 203(s), and in 1966 when it was extended to state and local government workers employed in hospitals and health care institutions, special schools and local transit operations (P.L. 89-601, 80 Stat. 830). ADEA was enacted in 1967 as P.L. 90-202, 81 Stat. 602 and it said,
"The Congress hereby finds and declares that ... the existence in industries affecting commerce, of arbitrary discrimination in employment because of age, burdens commerce and the free flow of goods in commerce." 29 U.S.C. § 621(a)(4).
"Employer" was defined as "a person engaged in an industry affecting commerce. .." 29 U.S.C. § 630(b).
The Fair Labor Standards Amendments of 1974, P.L. 93-259, 88 Stat. 55, redefined "public agency" to include the government of a State or an instrumentality of a state, thereby extending coverage to nearly all state and local government employees. Section 626(b) provides:
(b) The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section. Any act prohibited under section 623 of this title shall be deemed to be a prohibited act under section 215 of this title. Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title:
The Plaintiff alleged in its complaint that ADEA incorporated by reference the enforcement provisions of the FLSA.
The committee reports from both the Senate and House of Representatives on the ADEA do not discuss the role of the Fourteenth Amendment with respect to age discrimination but rather state that arbitrary discrimination in employment based on age burdens commerce and the free flow of goods in commerce. See H.R.Rep. No. 805, 90th Cong., 1st Sess. (1967), U.S.Code Cong. & Admin.News, 2213 and S.Rep. No. 723, 90th Cong., 1st Sess., 13 (4 Nov. 1967). There is not a word or even a smidgen in the 1974 amendments to the ADEA or the legislative history of the amendments supporting the contention that Congress was exercising its powers under the Fourteenth Amendment. To the contrary, the policies reflected by the amendments are exclusively couched in terms of commerce. See S.Rep. No. 690, 93rd Cong., 2nd Sess., 55 (22 Feb. 1974); H.R.Rep. No. 913, 93rd Cong., 2nd Sess. (15 Mar. 1974), U.S.Code Cong. & Admin.News, 2811 and Cong. Record Vol. 120 (1974)  Dates of consideration and passage: Senate, March 7 and 18, 1974 and House, March 20 and 28, 1974. Expressio unius est exclusio alterius.
In the most recent Supreme Court case of Pennhurst State School v. Halderman, ___ U.S. ___, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), Justice Rehnquist says,
"Because such legislation imposes congressional policy on a State involuntarily, we should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment."
In Pennhurst, supra, which cites National League of Cities, supra, with approval, the majority notes that in cases going to Congress' power to secure guarantees under the Fourteenth Amendment, such as Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1975), Congress "expressly articulated its intent to legislate pursuant to § 5." Justice Blackmun's concurrence referred to matters other than the majority view relating to the Fourteenth Amendment and Justice White's dissent, concurred in by Justices Brennan and Marshall, said "... it should not be lightly assumed that *600 Congress acted pursuant to its power and Section 5 in passing the Act. Here, there is no conclusive basis for determining that Congress acted pursuant to Section 5."
Because we, too, find nothing in the 1974 FLSA Amendments or their legislative history to suggest that Congress acted pursuant to any other power than the Commerce Clause, because the 1974 Act nowhere states that Congress was acting pursuant to its power to enforce the Fourteenth Amendment, and because ADEA is inextricably bound to FLSA, a Commerce Clause Act, by Congress' own action of intertwining ADEA's enforcement power with that of FLSA, we likewise conclude that this act was passed only under the Commerce Power of Congress.
Having concluded that ADEA was authorized by the Commerce Clause, the issue then is whether Congress, as in National League of Cities, supra, has impaired, altered or displaced State policies or functions essential to its separate and independent existence. In National League of Cities, supra, the Court said of the minimum wage and maximum hour provisions of FLSA,
"... their application will nonetheless significantly alter or displace the States' abilities to structure employer-employee relationships in such areas as fire prevention, police protection, sanitation, public health, and parks and recreation.... Indeed, it is functions such as these which governments are created to provide, services such as these which the States have traditionally afforded their citizens." (Emphasis supplied).
The management of wildlife resources by State game wardens, with powers of arrest, is surely a long-standing, traditional service of government. In Murgia, supra, and in Thomas, supra, it was recognized that compulsory retirement for law enforcement officers is a classification that is a legislative task, permissible under the Equal Protection Clause which "recognized the need for comparatively young, strong and vigorous personnel in law enforcement departments." Thomas v. Postal Inspection Service, supra. Any such policy of the State would be negated by the application to it of ADEA; the State could be saddled with greater economic responsibilities in keeping its law enforcement personnel on its payrolls an additional 10 years. Thus, an integral portion of government services which the States and their political subdivisions have traditionally afforded their citizens would be affected, contrary to the Tenth Amendment and to the holding of the National League of Cities v. Usery.
While the Plaintiff correctly urges that the Supreme Court in National League of Cities, supra, did not purport to limit all exercise of Commerce Clause power against the States, as shown by its approval of Fry v. United States, 421 U.S. 542, 547, 95 S.Ct. 1792, 1795, 44 L.Ed.2d 363 (1975), EEOC's argument that there is a national interest that "looms larger when balanced against Defendants' nominal interest in discriminating against its employees on the basis of age" has a hollow ring to it when the basic inconsistency of the United States is considered. How can there be a supervening national interest when the Nation itself requires mandatory retirement of its law enforcement personnel? We believe that Justice Blackmun's concurrence on the understanding that the National League majority was adopting a "balancing approach" provides the key to a correct understanding of National League, namely, that the Courts must use an ad hoc balancing test of weighing the national interest and policy against the State activity sought to be displaced by the federal regulation. Here, Justice Rehnquist's own references to the police protection and parks and recreation as typical State services traditionally rendered by States plus the inconsistency of the United States, require us to strike the balance for the State. It is
ORDERED that the complaint of the Plaintiff be, and it hereby is, dismissed with prejudice, Plaintiff to pay the costs of the parties incurred herein.
NOTES
[1] Archibald Cox, The Role of the Supreme Court in American Society, 50 Marq.L.R. 575, 582 (1967).
[2] Barber, National League of Cities v. Usery, New Meaning for the Tenth Amendment, 1976 Sup.Ct.Rev. 161.
[3] Heldt, The Tenth Amendment Iceberg, 30 Hastings L.J.1965.
[4] Prof. Frank I. Mickelman, States' Rights and States' Roles, 86 Yale L.J. 1165 at 1192.
[5] Laurence H. Tribe, Unraveling National League of Cities: The New Federalism and Affirmative Rights to Essential Government Service, 90 Harvard L.R. 1065.