Miriam KENNY, Plaintiff,

v.

BOARD OF TRUSTEES OF VALLEY COUNTY SCHOOL DISTRICT NUMBERS 1 AND 1–A, Defendants.

No. CV–81–148–GF.

United States District Court, D. Montana, Great Falls Division.

June 25, 1982.

John P. Albrecht, Choteau, Mont., for plaintiff.

Chadwick H. Smith, Helena, Mont., for defendants.

### MEMORANDUM

HATFIELD, District Judge.

Pending before the court is a motion to dismiss filed by the defendant, Board of Trustees of Valley County School District Nos. 1 and 1A ["Board"]. Both parties have submitted briefs on the issues raised by the motion to dismiss. The court has reviewed the briefs and is now ready to rule.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Miriam Kenny ["Kenny"], was a tenured teacher employed by the Board. Upon reaching age 65, her teaching contract was renewed on a year-to-year basis in accordance with Montana Code Annotat-

---

1. MCA § 20 4 203 states in part:
   Whenever a teacher has been elected by the offer and acceptance of a contract for the fourth consecutive year of employment by a district in a position requiring teacher certification except as a district superintendent or specialist, the teacher shall be deemed to be re-elected from year to year as a tenure teacher at the same salary and in the same or a comparable position of employment as that provided by the last executed contract with such teacher, unless ...
   ... (2) the teacher will attain the age of 65 years before the ensuing September 1 and the trustees have notified the teacher in writing by April 1 that his services will not be needed in the ensuing school fiscal year, *except that the trustees may continue to employ such a teacher from year to year until the school fiscal year following his 70th birthday.* (emphasis added)

ed [hereinafter MCA] § 20–4–203(2) (1979). Kenny became 69 years of age during the 1980–81 school year. On March 26, 1981, the Board notified Kenny that her services would not be needed for the 1981–82 school year. Again, the Board acted in accordance with MCA § 20–4–203(2) (1979), which provides that a teacher's tenure ends at age 65. At that time, the Board may continue to employ the teacher on a yearly basis until the school year following the teacher's 70th birthday.[1]

Kenny responded to the Board's action by filing a charge with the Equal Employment Opportunities Commission ["EEOC"] in accordance with 29 U.S.C. § 626(d) of the Age Discrimination in Employment Act ["ADEA"], 29 U.S.C. §§ 621 *et seq.* The charge was filed on June 21, 1981. Kenny also commenced proceedings against the Board under the Montana Human Rights Act (MCA §§ 49–1–101 *et seq.* (1979)) and the Montana Code of Fair Practices (MCA §§ 49–3–101 *et seq.* (1979)) by filing an administrative complaint with the Montana Human Rights Commission alleging discrimination by the Board on the basis of age in violation of those state statutes. The administrative complaint was filed on June 15, 1981. No final action was taken by the Montana Human Rights Commission. All administrative prerequisites to the filing of suit in this court have been satisfied.[2]

---

2. The administrative prerequisites to the filing of a suit under the ADEA are set forth in 29 U.S.C. § 626(d) and 29 U.S.C. § 633(b).
   29 U.S.C. § 626(d) states in part:
   No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. The charge shall be filed—
   (1) within 180 days after the alleged unlawful practice occurred; or
   (2) in a case to which section 14(b) [29 U.S.C. § 633(b)] applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.
   29 U.S.C. § 633(b) states:
   In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State au-

On November 3, 1981, Kenny filed a complaint in this court; that complaint was later amended. The amended complaint charges that the Board wrongfully discriminated against Kenny on the basis of age. Count I, brought under the ADEA, alleges that Kenny's termination was an unlawful employment practice prohibited by 29 U.S.C. § 623(1) because MCA § 20–4–203(2) (1979) violates the ADEA and (2) because Kenny's termination was on the basis of age. Count II, brought under the Fourteenth Amendment to the Constitution, alleges that MCA § 20–4–203(2) (1979) violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Count III, which is a pendent state claim, alleges that the Montana Human Rights Act and the Montana Code of Fair Practices repealed MCA § 20–4–203(2) (1979). Alternatively, Count III alleges that Kenny's termination was on the basis of age and not on the basis of merit and qualification, in violation of the Montana Human Rights Act and the Montana Code of Fair Practices. Count IV, also a pendent state claim, alleges that MCA § 20–4–203(2) (1979) violates the equal protection and due process clauses of Mont.Const.Art. II, §§ 3, 4 and 17.[3] Jurisdiction over the amended complaint vests in this court pursuant to 28 U.S.C. § 1331(a) and 28 U.S.C. § 1337.

## II. DISCUSSION:

### A. *Issues*

In ruling on whether or not to dismiss Kenny's complaint, this court is faced with two issues:

1. Whether the ADEA, as applied to State schools, is an invalid exercise of congressional power under the Commerce Clause, which violates the Tenth Amendment to the Constitution;

2. Whether Montana's mandatory teacher retirement provision violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution and the Montana Constitution of 1972.

### B. *Application of the ADEA to State Schools*

■ The Board argues that Kenny's complaint must be dismissed because the ADEA, as applied to State schools, violates the Tenth Amendment to the Constitution.[4] The Board relies upon *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), and argues that the ADEA, like the Fair Labor Standards Act ["FLSA"] in *National League of Cities*, deprives it of its freedom to exercise integral

thority to grant or seek relief from such discriminatory practice, *no suit may be brought under section 7 of this Act [29 USC § 626] before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated*: Provided, That such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State law. If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority. (emphasis added)

3. Mont.Const.Art. II, § 3 states:
  All persons are born free and have certain inalienable rights. They include the right to a clean and healthful environment and the rights of pursuing life's basic necessities, enjoying

and defending their lives and liberties, acquiring, possessing and protecting property, and seeking their safety, health and happiness in all lawful ways. In enjoying these rights, all persons recognize corresponding responsibilities.
Mont.Const.Art. II, § 4 states:
  The dignity of the human being is inviolable. No person shall be denied the equal protection of the laws. Neither the state nor any person, firm, corporation, or institution shall discriminate against any person in the exercise of his civil or political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas.
Mont.Const.Art. II, § 17 states:
  No person shall be deprived of life, liberty, or property without due process of law.

4. The Tenth Amendment to the Constitution states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

state governmental functions because it must comply with federal employment policies and practices.[5]

In determining whether the ADEA may be applied to State schools, the court must analyze this case in light of *National League of Cities* and the subsequent three-part test set forth in *Hodel v. Virginia Mining & Reclamation Ass'n.*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981). In *National League of Cities*, the United States Supreme Court considered the constitutional challenge to the 1974 amendments to the FLSA, which had extended Federal minimum wage and maximum hour provisions to state and local government employees. In striking down these amendments, the Supreme Court noted that when Congress attempts to regulate "States as States" the Tenth Amendment mandates the recognition of those "attributes of sovereignty attaching to every state government which may not be impaired by Congress. . . ." *National League of Cities v. Usery, supra*, 426 U.S. at 845, 96 S.Ct. at 2471. The Court concluded that the power of the state, through state officials, to allocate a state's resources in areas of public health and welfare was an "attribute of sovereignty" and ruled that "insofar as the challenged amendments operate to directly displace the states' freedom to structure integral operations in areas of traditional governmental functions, they are not within the authority granted Congress by Art. I, § 8, cl. 3." *National League of Cities v. Usery, supra*, 426 U.S. at 852, 96 S.Ct. at 2474.

The reasoning in *National League of Cities* was set forth in a three-part test in *Hodel v. Virginia Surface Mining & Reclamation Ass'n., supra*. In *Hodel*, the Supreme Court ruled that in order to succeed, a Tenth Amendment claim that "Congressional commerce power legislation is invalid under the reasoning of National League of Cities must satisfy *each* of three requirements." *Hodel v. Virginia Surface Mining & Reclamation Ass'n., supra*, 452 U.S. at 287, 101 S.Ct. at 2366. Those requirements are (1) the challenged federal statute must regulate the "States as States; " (2) the challenged federal statute must address matters that are indisputably attributes of State sovereignty; and (3) the States' compliance with the federal law would directly impair their ability to structure integral operations in areas of traditional governmental functions. *Id.* at 287–88, 101 S.Ct. at 2365–66.[6]

Applying the three-part test in *Hodel* to the present situation, the court finds that while part (1) of the test is satisfied, parts (2) and (3) are not.

### 1. *"States as States"*

There is no doubt that the ADEA regulates "States as States." 29 U.S.C. § 630(b)(2) defines "employer" for purposes of the ADEA as including "a State or political subdivision of a state and any agency or instrumentality of a state or a political subdivision of a state. . . ." The public school districts of the State of Montana certainly

---

**5.** Whether the provisions of the ADEA may be properly applied to state and local governments has been a subject of disagreement among the courts. Some have held that the ADEA does not violate the Tenth Amendment, and may be applied to states, *U. S. E. E. O. C. v. County of Calumet*, 519 F.Supp. 195 (E.D.Wis.1981); *Aaron v. Davis*, 424 F.Supp. 1238 (D.Ark.1976); *Usery v. Board of Education of Salt Lake City*, 421 F.Supp. 718 (C.D.Utah 1976), while others have held to the contrary, *Taylor v. Montana Dept. of Fish and Game*, 523 F.Supp. 514 (D.Mont., Missoula Div., 1981); *E. E. O. C. v. State of Wyoming*, 514 F.Supp. 595 (D.Wyo. 1981).

The Supreme Court has accepted *E. E. O. C. v. State of Wyoming* for review on direct appeal,

---

—— U.S. ——, 102 S.Ct. 1423, 71 L.Ed.2d 645 (1982). The guidance offered by the Supreme Court on the ADEA and its relationship to the Tenth Amendment will perhaps resolve this issue.

**6.** The Supreme Court made it clear, however, that merely satisfying these three requirements does not guarantee a successful Tenth Amendment challenge to congressional commerce power action. The Court stressed that there are "situations in which the nature of the federal interest advanced may be such that it justifies State submission." *Hodel v. Virginia Surface Mining & Reclamation Ass'n., supra*, 452 U.S. at 288 n.29, 101 S.Ct. at 2366 n.29.

fall within the purview of 29 U.S.C. § 630(b)(2). Thus, part (1) of the *Hodel* test is satisfied.

## 2. Attributes of State Sovereignty

However, part (2) of the *Hodel* test is not satisfied. To satisfy part (2) of the test, the ADEA must address matters that are "indisputably attributes of State sovereignty." The Board argues that the ADEA does, in fact, regulate an area within the parameters of state sovereignty: schools. The Board asserts that it is a historic function of a state's sovereignty to set educational standards and then provide the schools to meet these standards. The court does not dispute the Board's assertion that it is within the province of the State to provide public education for its citizens. However, the real "matter" which the ADEA "addresses" is set forth in 29 U.S.C. § 621(b), in which Congress declares:

> It is therefore the purpose of this Act to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment.

In passing the ADEA, Congress announced a policy of prohibiting arbitrary age discrimination, a policy equally applicable to private, as well as state and local, employers. 29 U.S.C. § 630(b). Unlike *National League of Cities*, in which Congress sought to impose an affirmative obligation on the states (*i.e.*, Congressionally prescribed minimum wages and maximum hours to be paid by the states in their capacities as sovereign governments), the ADEA seeks to prohibit the state employer from arbitrarily discriminating on the basis of age. This is not the type of substantial interference contemplated by the Supreme Court in *National League of Cities*. Rather, the ADEA seeks to protect those "[i]ndividuals within those state systems [who]

continue to enjoy constitutionally guaranteed rights which are statutorily protected in such federal legislation as the ADEA." *Usery v. Board of Education of Salt Lake City*, 421 F.Supp. 718, 719 (C.D.Utah 1976). It is the opinion of this court, then, that the policy of prohibiting arbitrary age discrimination in employment overrides the Board's assertion that the ADEA should not apply to state schools. Therefore, part (2) of the *Hodel* test is not satisfied.

## 3. Ability to Structure Integral Operations

In order to satisfy part (3) of the *Hodel* test, the ADEA must "directly" impair the state's ability to structure integral operations in areas of traditional governmental functions.

Certainly, public education provided by the state for its citizens is a "traditional governmental function". The issue, then, is whether the ADEA "directly" displaces the state's freedom to structure the integral operations of that traditional function. The court holds that it does not.

Presumably, "integral operations" includes such items as wages, hours, type of compensation, benefits, etc. . . . .[7] *See U.S. E.E.O.C. v. County of Calumet*, 519 F.Supp. 195, 202 (E.D.Wis.1981); *National League of Cities v. Usery, supra*, 426 U.S. at 847–49, 96 S.Ct. at 2472–73. Application of the ADEA to state employers does not "directly" impair the state's ability to structure these "integral operations". At best, the effect of the ADEA is tangential and its intrusion minimal. As noted in Part II(B)(2), *supra*, the purpose of the ADEA is to prohibit arbitrary age discrimination in employment. 29 U.S.C. § 621(b). As such, the ADEA does not impermissibly impinge on the state's ability to operate its public schools. The ADEA is not telling the state how to manage and structure its substantive employment operations; rather, the ADEA requires the state not to make sub-

---

**7.** This is not intended to be an exhaustive list of what might be termed "integral operations" within a "traditional governmental function."

stantive employment decisions in an arbitrary and discriminatory fashion. Absent a showing that the ADEA "directly" displaces the state's ability to structure the "integral operations" of its schools, and that the ADEA causes the substantial interference encompassed by *National League of Cities*, the court must conclude that part (3) of the *Hodel* test has not been satisfied.

Accordingly, the Board's motion to dismiss the complaint for failure to state a claim under the ADEA is denied.

### C. *Other Considerations*

As an alternative basis for denying the Board's motion to dismiss the ADEA claim, Kenny argues that the 1974 amendments to the ADEA, which extended the coverage of the ADEA to state and local governments was a valid exercise of congressional power pursuant to § 5 of the Fourteenth Amendment.[8] As such, the ADEA may be properly applied to state schools. However, since the court has just determined that Kenny's complaint states a claim under the ADEA, without violating the Tenth Amendment, the court does not reach the merits of this issue.[9]

### D. *Equal Protection and Due Process*

The second issue presented to the court is whether Montana's mandatory teacher retirement plan violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment as well as Mont.Const. Art. II, §§ 3, 4, and 17. The Board argues

that MCA § 20–4–203(2) (1979) rationally furthers a legitimate state interest, such as tenure, and thus passes muster under the Fourteenth Amendment. Kenny counters by arguing that her constitutional challenge to MCA § 20–4–203(2) (1979) should not be dismissed without a trial, citing *Gault v. Garrison*, 569 F.2d 993 (7th Cir. 1977).

This issue is moot. In *Dolan v. School District No. 10, Deer Lodge County*, Mont., 636 P.2d 825, 830 (1981), the Montana Supreme Court ruled that MCA § 20–4–203(2) (1979)[10] was impliedly repealed by the enactment of the Montana Human Rights Act, MCA §§ 49–1–101 (1979) *et seq.*

In *Dolan*, the school district appealed from the findings of fact and conclusions of law entered by the district court which declared that MCA § 20–4–203(2) (1979) violated the Equal Protection and Due Process Clauses of the United States and Montana Constitutions, and was repealed by the passage of the Montana Human Rights Act. Faced with the opportunity to resolve the constitutional issue, the Supreme Court chose to consider the statutory issue. *Dolan v. School District No. 10, supra*, 636 P.2d at 827. Noting that repeals by implication are not favored, the court carefully analyzed the language of MCA § 20–4–203(2) (1979) and the Montana Human Rights Act, and concluded that the latter accurately reflected the intent of the legislature. *Id.* at 828–29. The court determined that the broad antidiscrimination prohibitions of the Montana Human Rights Act—which proscribe employment discrimination based on

8. § 5 of the Fourteenth Amendment provides: "The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article."

9. Whether Congress, in enacting the 1974 amendments to the ADEA, exercised its power under § 5 of the Fourteenth Amendment has been the subject of as much debate and dispute among the courts as the issue of whether the ADEA, as applied to states, violates the Tenth Amendment. *See* note 5, *supra*. Cases finding that the amendments to the ADEA were passed by Congress under § 5 of the Fourteenth Amendment include *U. S. E. E. O. C. v. County*

of Calumet, supra; Marshall v. Delaware River and Bay Authority*, 471 F.Supp. 886 (D.Del. 1979); *Usery v. Board of Education of Salt Lake City, supra; Aaron v. Davis, supra.* Cases to the contrary include *Taylor v. Montana Dept. of Fish and Game, supra* and *E. E. O. C. v. State of Wyoming, supra.*

The Supreme Court's recent acceptance of *E. E. O. C. v. State of Wyoming* for direct review on appeal will perhaps resolve and clarify this issue, as well as the Tenth Amendment issue. *See* note 5, *supra.*

10. *See* text at note 1, *supra.*

age except in very limited circumstances—superseded MCA § 20–4–203(2) (1979) (which the court found "permits discrimination in employment based *solely* upon age."). *Id.* at 829. Accordingly, the court explicitly held that the Montana Human Rights Act impliedly repealed MCA § 20–4–203(2) (1979). *Id.* at 830.

██ In light of the decision in *Dolan*, this court finds that the equal protection and due process issue is moot. State courts are the final arbiters of the state's own law, and this court is not in a position to examine the correctness of the state court decisions. *See Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975); *Wardius v. Oregon*, 412 U.S. 470, 477, 93 S.Ct. 2208, 2213, 37 L.Ed.2d 82 (1973). The Montana Supreme Court, as the highest court in Montana, has ruled that MCA § 20–4–203(2) (1979) has been impliedly repealed. That decision is binding on this court. For this court to rule that MCA § 20–4–203(2) (1979) violates the Equal Protection and Due Process Clauses of the United States and Montana Constitutions would merely be an attractive academic exercise.

Accordingly, for reasons other than those stated by the Board, *supra*, the Board's motion to dismiss for failure to state a claim under the Equal Protection and Due Process Clauses of the United States and Montana Constitutions is granted, the issue having been rendered moot.[11]

### III. CONCLUSION AND ORDER

For the reasons set forth above, it is HEREBY ORDERED as follows:

1. That the defendant's motion to dismiss the plaintiff's claim under the Age Discrimination in Employment Act is DENIED. Count I of the amended complaint states a claim insofar as it alleges that the plaintiff's employment termination was on the basis of age. Count III of the amended complaint states a claim insofar as it alleges that the plaintiff's employment termination was on the basis of age and not on the basis of merit and qualification, in violation of the Montana Human Rights Act and the Montana Code of Fair Practices.

2. That the defendant's motion to dismiss the plaintiff's claim under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution and Mont.Const.Art. II, §§ 3, 4, and 17, is GRANTED. Counts II and IV of the amended complaint are DISMISSED for failure to state a claim upon which relief may be granted.

---

11. By a letter dated June 2, 1982, counsel for the Board directed the court's attention to the recent decision in *Lecompte v. University of Houston System*, 535 F.Supp. 317 (S.D.Tex. 1982). In *Lecompte*, the district court held that a claim for back pay in an employment discrimination action is barred by the Eleventh Amendment if the award would be paid out of public funds. *Id.* at 320. However, that case is distinguishable from the case at bar.

In *Lecompte*, the plaintiff brought her sex discrimination suit under Title VII and 42 U.S.C. § 1983. The court dismissed her claim under Title VII for failure to comply with the administrative prerequisites. The court then focused its attention on the plaintiff's claim under 42 U.S.C. § 1983. The court concluded that al-

though the defendant might be a "person" within the meaning of 42 U.S.C. § 1983, the Eleventh Amendment barred the plaintiff's *monetary* claim if the award would be paid out of the public treasury. Thus, the court applied the Eleventh Amendment bar *only* in the context of the plaintiff's monetary claim under 42 U.S.C. § 1983; her claims for equitable relief against the defendant survived scrutiny under the Eleventh Amendment.

In this case, Kenny has not alleged a claim under 42 U.S.C. § 1983. Therefore, the reasoning and holding in *Lecompte*, insofar as it relates to monetary relief under 42 U.S.C. § 1983 as being barred by the Eleventh Amendment, is inapplicable to this case.