W. J. USERY, Jr., Secretary of Labor, United States Department of Labor, Plaintiff,

v.

The BOARD OF EDUCATION OF SALT LAKE CITY, Defendant.

No. C 75–510.

United States District Court, D. Utah, C. D.

Sept. 1, 1976.

Lois G. Williams, U. S. Dept. of Labor, Washington, D. C., Thomas E. Korson, U. S. Dept. of Labor, Denver, Colo., for plaintiff.

H. Wayne Wadsworth, Salt Lake City, Utah, for defendant.

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALDON J. ANDERSON, District Judge.

Plaintiff has alleged that defendant's selection process to fill administrative vacancies in the public school system arbitrarily discriminated against three school officials on the basis of age, contrary to the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. §§ 621 *et seq.* (1975). The defendant moved for summary judgment prior to the decision in *National League of Cities v. Usery,* —— U.S. ——, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), and now argues that the ADEA, like the Fair Labor Standards Act (FLSA) in *National League of Cities,* unconstitutionally includes within the definition of "employer" a state or political subdivision of a state and any agency or instrumentality thereof. 29 U.S.C.A. § 630(b) (1975). As an "employer" subject to the age discrimination limitations in the ADEA, 29 U.S.C.A. § 623(a) (1975), the defendant argues that it is deprived of its freedom to exercise integral state gov-

ernmental functions because it must comply with these federal employment policies. For the reasons stated herein, defendant's motion for summary judgment must be denied.

The issue before this court is the effect of *National League of Cities* on congressional power under the Commerce Clause to require state employers to comply with the age discrimination provisions of 29 U.S.C.A. § 623(a) (1975) in exercising their traditional and integral governmental functions. *National League of Cities* struck down the 1974 amendments to the FLSA (29 U.S.C.A. §§ 203(s)(5), (x) (Supp.1975)), which had extended the minimum wage and maximum hours provisions to the states and their subdivisions as employers. The Court rejected the extensive congressional statutory scheme in the FLSA that was designed to supplant the wage and hour structure traditionally developed by state employers. The separate and independent existence of a state as a sovereign political entity in this federal system insulated the state from the significant financial burdens and the direct displacement of its policy choices which would have resulted from imposing federal wage and hour standards on the organization and structure of an integral state operation. The Court therefore held that "insofar as the challenged amendments operate to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions," they are not within the Commerce Clause power granted to Congress by Article I, § 8, cl. 3 of the United States Constitution. 96 S.Ct. at 2474.

The Court in *National League of Cities,* however, was not confronted with an allegation of discrimination against specific individuals in the application of minimum wages and maximum hours, but the Court analyzed and rejected the organic restructuring by Congress of what was properly and traditionally a state function in organizing employer-employee relations. Acknowledging that public education may be an integral state government function, such a state function must operate within constitutional bounds. Individuals within those

state systems continue to enjoy constitutionally guaranteed rights which are statutorily protected in such federal legislation as the ADEA. Otherwise, *National League of Cities,* so interpreted, would undermine constitutionally and statutorily recognized and protected individual rights in employment merely because the federal legislation affects, in some manner, an integral state governmental function. Such an absolute interpretation would itself derogate from the federal system by unduly restricting congressional power to statutorily protect individual rights in employment in which the federal government has a significant interest.

The majority opinion in *National League of Cities* does not rigidly protect the states as separate and independent sovereignties in the exercise of their integral governmental functions. The Court's analysis of its previous decision in *Fry v. United States,* 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975), wherein the Court upheld the Economic Stabilization Act as applied to state employers, indicates that the Court will balance the respective interests of federal and state governments in regulating economic activity. *See* 96 S.Ct. at 2474–75. The Court in *National League of Cities* recognized and Mr. Justice Blackmun, concurring, stressed the balancing approach that the Court adopted to weigh competing national and state interests in regulating employer-employee relations in state employment. *See* 96 S.Ct. at 2476 (Blackmun, J., concurring). *See also* E. Firmage, *National League of Cities v. Usery: Congressional Power and States' Rights,* 3 *Utah B.J.* 3, 4 (Winter-Spring Issue 1976). In distinguishing *Fry,* the Court weighed such factors as the degree of federal intrusion into state matters, the exigent national circumstances justifying such an intrusion, and the traditionally local nature of the state activities that were to be nationally regulated.

In addition to the balancing analysis in *National League of Cities* that distinguished *Fry,* the Court held that only those federal intrusions that "*directly* displace the States' freedom to structure integral operations" are not within the congressional com-

merce power. 96 S.Ct. at 2474 (emphasis added). An assessment of a "direct" displacement of the state's power necessarily requires a balancing of the competing national and state interests.

This court, therefore, construes *National League of Cities* to require a balancing of the state and federal interests in employment policies and practices even where integral state government functions may be affected. Having decided that *National League of Cities* prohibited direct organic restructuring by Congress of a traditional state governmental function where the state interest in preserving the attributes of its sovereignty in this federal system far outweighed the national interest in regulating wages and hours of state employees, the court must determine whether the constitutional source of power by which Congress chose to protect individuals against age discrimination in state employment, as embodied in the ADEA, is consistent with the *National League of Cities'* balanced limitation on congressional commerce power over integral state government operations.

While no national employment emergency presently exists similar to the economic one remedied by the Economic Stabilization Act in *Fry,* other significant factors support the federal age discrimination provisions of 29 U.S.C.A. § 623(a) (1975) as applied to state employers. Congress has a national interest in preventing arbitrary discrimination in employment on the basis of age and this includes protecting the significant number of individuals employed by states or instrumentalities and agencies thereof. This national interest is particularly significant when balanced against the defendant's nominal interest in arbitrarily discriminating in its employment decisions on the basis of age. Such a policy choice to discriminate on the basis of age in selecting individuals for employment within a state education system is outweighed by the significant national interest in insuring nondiscriminatory employment practices in areas affecting interstate commerce, even assuming that public education represents an integral state governmental operation.

In addition, the degree of federal intrusion into this area of state concern is minimal since the ADEA only imposes a limited negative obligation on the state employer not to arbitrarily use age as an employment criterion, however the remaining criteria may be structured, rather than an affirmative obligation to totally restructure an integral state operation of the school board. While negative obligations may be as burdensome on state governments as affirmative obligations, the state may choose to avoid any burden on its governmental operations by complying with a constitutionally required employment practice not to arbitrarily discriminate on the basis of age in its employment decisions.

■ Congress may therefore constitutionally regulate discriminatory state employment practices under the Commerce Clause where the national interest in employment significantly outweighs the state's interest in discriminatory employment policies and practices.

As an alternative rationale in the balancing approach of *National League of Cities,* the ADEA's limited intrusion into state affairs to prevent arbitrary age discrimination by state employers does not "*directly*" displace the state's freedom to structure integral state operations, but at most indirectly affects those operations while essentially leaving the defendant's employment structure intact.

While congressional power under the Commerce Clause supports the extension of the ADEA's age discrimination provisions in 29 U.S.C.A. § 623(a) (1975) to state employers under the balancing approach that the Court adopted in *National League of Cities,* plaintiff raises an additional constitutional ground which independently upholds Section 623(a). Shortly after the *National League of Cities* decision, the Court, in *Fitzpatrick v. Bitzer,* —— U.S. ——, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), upheld state employees' recovery of money damages against state employers as provided in 42 U.S.C.A. §§ 2000e *et seq.* (1974) (Title VII) over the state's challenge that monetary recovery for discriminatory employ-

ment practices from the state treasury violated the state's sovereignty. The Court recognized that Title VII was "appropriate legislation" under Section 5 of the Fourteenth Amendment to implement the substantive guarantees of Section 1 of that Amendment. 96 S.Ct. at 2666 n.9.

In light of the similar statutory and constitutional objectives of Title VII and Section 623(a) of the ADEA to prohibit arbitrary and discriminatory employment criteria based on race, color, religion, sex, national origin, or age and in the absence of a clear expression by Congress in the ADEA of the constitutional foundation for this legislation in the Commerce Clause or the Fourteenth Amendment, this court interprets the ADEA's age discrimination limitations on state employers in 29 U.S.C.A. § 623(a) (1975) as constitutionally permissible under either the Commerce Clause or the Fourteenth Amendment. The Fourteenth Amendment is particularly applicable in the present circumstances where allegations of arbitrary discrimination in employment practices by a state employer, contrary to Section 623(a) of the ADEA, if proven, would constitute forbidden state action that denies equal protection of the law. The Court in *National League of Cities* specifically expressed no view on whether Congress could achieve "different results [in] affect[ing] integral operations of state governments by exercising authority granted it under other sections of the Constitution such as . . . § 5 of the Fourteenth Amendment." 96 S.Ct. at 2474 n.17. The Court in *Fitzpatrick* recognized that by Section 5 of the Fourteenth Amendment,

Congress is expressly granted authority to enforce "by appropriate legislation" the substantive provisions of the Fourteenth Amendment, which themselves embody significant limitations on state authority. When Congress acts pursuant to § 5, not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limi-

tations on state authority. We think that Congress may, in determining what is "appropriate legislation" for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts.

96 S.Ct. at 2671. *See also Ex Parte Virginia,* 100 U.S. 339, 345–48, 25 L.Ed. 676 (1880).

This court therefore holds that the age discrimination provisions of Section 623(a) of the ADEA as imposed on state employers are constitutional limitations upon the exercise of state authority in a traditional and integral area of state governmental operations insofar as Section 623(a) is enacted pursuant to congressional authorization under Section 5 of the Fourteenth Amendment to enforce the substantive guarantees of Section 1 of that Amendment.

Defendant not being entitled to judgment as a matter of law under Rule 56(c) of the Federal Rules of Civil Procedure, it is hereby ordered that the defendant's motion for summary judgment is denied.