Janice Ward Parrish City Personnel Administrator Delray Beach
QUESTION:
Is the establishment of a mandatory retirement age of 65 in a municipal pension plan for policemen and firemen, and the establishment of a mandatory retirement age of 60 (65 with the city's consent) in a pension plan for all other municipal employees, unlawful?
SUMMARY:
The 1978 Amendments to the Federal Age Discrimination in Employment Act prohibit a municipality from requiring its employees to retire at age 60 solely because of age, even where such a mandatory retirement provision is part of a bona fide pension or retirement plan, unless age is a bona fide occupational qualification reasonably necessary to the operation of a particular business or for a particular job or occupation. Effective January 1, 1979, federal law will prohibit mandatory retirement of municipal employees between 40 and 70 solely because of age, even if required under an existing bona fide municipal pension or retirement plan, unless age is a bona fide occupational qualification reasonably necessary for a particular job or occupation, or the employee has been in a bona fide executive or high policymaking position for two years prior to retirement and is entitled to immediate specified retirement benefits, or if such retirement is required or permitted by a bona fide employee benefit plan or seniority system provided by collective bargaining agreements in effect on September 1, 1977, in which case the prohibitions do not take effect until the termination date of the collective bargaining agreement or January 1, 1980, whichever occurs first. The Florida Age Discrimination in Employment Law, codified as s. 112.044, F. S., would continue to cover municipal employees who are 65 (before January 1, 1979) or 70 (after January 1, 1979) years of age or older. Such employees may not, under statute law, be required to retire solely because of their age unless age is a bona fide and reasonably necessary occupational qualification or the mandatory retirement provision is part of a bona fide seniority system or other employee benefit plan such as a pension or retirement plan.
STATEMENT OF FACTS:
In 1974 the City of Delray Beach enacted legislation which amended the retirement and pension plans for municipal employees. The city currently provides two pension plans: One plan is for municipal firemen and policemen, the other serves all other general municipal employees. The policeman/fireman plan provides that although a member of the plan may, if eligible, elect to retire prior to his 65th birthday, he must retire no later than his 65th birthday. Moreover, a member may be required to retire earlier, if eligible, upon a determination by the member's departmental chief and the city manager that the member `is no longer physically or mentally capable of satisfactorily performing his duties.' See s. 3(1)(a) and (b) of the Police and Firefighters Retirement Pension Plan, Ordinance No. 12-74.
The retirement plan for general employees provides for a normal retirement date on the first day of the month following a member's 60th birthday, or after 10 years of credited service, if later. However, an employee may continue his employment beyond the normal retirement date with the city's consent, but may work no longer than the first day of the month following his 65th birthday. See
s. 4.2(a) of the General Employees' Pension Plan, Ordinance No. 13-74. Thus, it is clear that neither plan permit employment past the age of 65.
Initially, it should be noted that legislation establishing or permitting the establishment of a mandatory retirement age for public employees has been repeatedly sustained against challenges that such laws deny equal protection of the laws to the employees.See, e.g., Massachusetts Board of Retirement v. Murgia,427 U.S. 307 (1976) (mandatory retirement of uniformed police officers at age 50); McIlaine v. Pennsylvania, 415 U.S. 986 (1974) (mandatory retirement of state police officers at age 60); Johnson v. Lefkowitz, 566 F.2d 866 (2nd Cir. 1977) (mandatory retirement of tenured civil service employees at age 70); Rubino v. Ghezzi,512 F.2d 431 (2nd Cir. 1975), cert. denied, 423 U.S. 891 (1975) (mandatory retirement of state court judges at age 70); Fazekas v. University of Houston, 565 S.W.2d 299 (Ct. Civ. App. Tex. 1978) (mandatory retirement of university professors at age 65); Hawkins v. Preisser, 264 N.W.2d 726 (Iowa 1978) (mandatory retirement of state employees at age 65).
It has been held that the right to be employed by a governmental agency is not a fundamental right. Massachusetts Board of Retirement v. Murgia, supra, at 312; see also Board of Regents v. Roth, 408 U.S. 564 (1972); Headley v. Baron, 228 So.2d 281, 284
(Fla. 1969); Jones v. Board of Control, 131 So.2d 713, 717 (Fla. 1961). Nor does a classification based upon age constitute a suspect classification. Massachusetts Board of Retirement v. Murgia, supra; and see Quicker v. City of Fort Lauderdale,354 So.2d 400 (4 D.C.A. Fla., 1978). Therefore, mandatory retirement statutes have been found to be constitutional, provided that they are reasonably or rationally related to legitimate state interests such as efficiency or economy or motivation of younger employees.See, e.g., Johnson v. Lefkowitz, supra, at 869; Hawkins v. Preisser, supra, at 730.
A consideration of Florida law on the subject of involuntary retirement reveals that only certain classes of governmental employees are required to retire at a designated age. See, e.g., s. 8, Art. V, State Const., providing that no justice or judge shall serve after attaining the age of 70 except upon temporary assignment or to complete a term, one-half of which he has served; s. 231.031, F. S., requiring mandatory retirement at age 70 for instructional personnel in the public schools; s. 321.04(4), F. S., providing that `[n]o patrol officer of the Florida Highway Patrol shall serve beyond the age of 62, any provision of the laws of this state to the contrary notwithstanding.' Moreover, with regard to state employees within the Career Service System or any other merit system plan or system providing for tenure, s. 112.051(1), F. S., states that such employees may not be retired by the agency or department in which they are employed solely because of the attainment of age 65. And, although the statute permits retirement if the agency or department specifies charges or other cause for retirement, `[t]he attainment of age 65 or older shall not be considered as such specified cause for retirement.'
The present provisions of s. 112.051(1), F. S., were brought into the statutes as part of the `Florida Age Discrimination in Employment Act,' ss. 9-12, Ch. 76-208, Laws of Florida. The remaining provisions of the act has been codified as s. 112.044, F. S. With the enactment of s. 112.044, the Legislature stated its intention `to promote the employment of older persons, based upon ability rather than age, and to prohibit arbitrary age discrimination in employment.' Section 112.044(2)(a) defines `employer' to mean:
 . . . the state or any county, municipality or special district or any subdivision or agency thereof. This definition shall not apply to any law enforcement agency or firefighting agency in this state.
From the foregoing, it is evident that the City of Delray Beach is an `employer' within the scope and for the purposes of the statute. Thus, it is important to determine what employment activities and practices are prohibited by the terms of s.112.044.
With regard to mandatory retirement, s. 112.044(3)(a), F. S., states, in relevant part:
 (a) Except as provided in paragraph (f), it is unlawful for an employer to:
 1. Fail or refuse to hire, discharge or mandatorily retire . . . any individual . . . because of age.
However, s. 112.044(3)(f), referred to in the above-cited statute, states, in part:
 (f) It is not unlawful for any employer, employment agency, or labor organization to:
 1. Take any action otherwise prohibited under paragraphs (a), (b), (c), or (e), based on a bona fide occupational qualification reasonably necessary to the normal operation of the particular business.
 2. Observe the terms of a bona fide seniority system or any bona fide employee benefit plan, such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this act.
In light of the provisions of s. 112.044(3)(f), supra, it seems evident that the Delray Beach municipal pension plans which have been in existence since 1974 (two years prior to the enactment of s. 112.044, F. S.), could not have been adopted as subterfuges to avoid the requirements of that statute. Hence, such pension plans could, under state law, lawfully require employees embraced within the system to retire at age 60 or 65. See United Air Lines v. McMann, 54 L.Ed.2d 402 (1977), in which the Supreme Court considered 29 U.S.C. § 623(4)(f)2, which, in terms virtually identical to s. 112.044(3)(f)2., provided an exception to the Federal Age Discrimination in Employment Act, 29 U.S.C. § 623 etseq., enacted in 1967. The court ruled that a mandatory retirement provision in a pension plan adopted in 1941, was permissible and valid, because `a plan established in 1941 if bona fide, as is conceded here, cannot be a subterfuge to evade an Act passed 26 years later.' United Air Lines, supra, at 413. Accord: Brennan v. Taft Broadcasting, 500 F.2d 212 (5th Cir. 1974); Thompson v. Chrysler, 569 F.2d 989 (6th Cir. 1978). But see, The Age Discrimination in Employment Act Amendments of 1978, Pub.L. No.95-256, infra.
Moreover, with regard to policemen and firemen, it would appear that the city would be able to establish pursuant to s.112.044(3)(f)1., F. S., that age is a `bona fide occupational qualification' [hereafter BFOQ] reasonably necessary for such jobs or occupations which would reasonably preclude the continued employment of persons over the age of 65. See Massachusetts Board of Retirement v. Murgia, supra, at 314, in which the court considered the record which included testimony as to the rigors and demands of police activities, as well as medical testimony concerning the relationship of age to the ability to perform these functions, in finding that the state had a rational basis for requiring retirement at age 50 for uniformed state police officers; and Ridaught v. Division of Florida Highway Patrol,314 So.2d 140, 144 (Fla. 1975), a case decided under s. 112.043, F. S., in which the court ruled that a requirement that applicants for the highway patrol be less than 35 years old was valid and reasonable in light of the `character of such duties as requiring special attributes of ability, alertness and dexterity necessary in the patrolling of highways in the state, and in dealing with persons violating the traffic laws of the state.' Cf. Usery v. Tamiami Trail Tours, 531 F.2d 224 (5th Cir. 1976), in which the court developed a framework to be used in analyzing a BFOQ defense under the Federal Age Discrimination in Employment Act.
The preceding discussion of Florida law is not entirely dispositive of your inquiry, however. The provisions of the Federal Age Discrimination in Employment Act [hereafter ADEA],29 U.S.C. § 623 et seq., must be considered. In particular, the impact of the 1978 amendments to the ADEA, Pub.L. No. 95-256,92 Stat. 189 (April 6, 1978), must be analyzed.
At the outset, it should be noted that the prohibitions against discrimination in employment on the basis of age set forth in the ADEA are applicable to state and local governments as well as to private employers. 29 U.S.C. § 630(b), defines the term `employer' to mean, inter alia:
 a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. . . . The term also means . . . a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State.
Thus, a municipality is an `employer' for purposes of the act, and is required to observe the act's prohibition against age discrimination in the same manner as a private employer.
The Supreme Court's decision in Usery v. National League of Cities, 426 U.S. 883 (1976), raises the question of whether Congress may constitutionally extend coverage of the ADEA to include state and local governmental employers. In National Leagueof Cities, the court held that Congress exceeded its authority under the commerce clause by attempting to extend the minimum wage and maximum hour provisions of the 1974 Fair Labor Standards Amendments to state and local government employers. A number of federal courts have analyzed the impact of National League ofCities upon the ADEA and have concluded that since the ADEA was an exercise of Congressional power under s. 5 of the Fourteenth Amendment rather than under the commerce course, the provisions of the ADEA could be applied constitutionally to state and local governments. See, e.g., Arritt v. Grisell, 567 F.2d 1267 (4th Cir. 1977); Remmick v. Barnes City, 435 F. Supp. 914 (D.C. N.D. 1977); Usery v. Board of Education of Salt Lake City, 421 F. Supp. 718
(D.C. Utah 1976).
Prior to its amendment in 1978, the ADEA was virtually identical in many respects to Florida's age discrimination law. Section 4(a)(1) of the act makes it unlawful for an employer to
 discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. [29 U.S.C. § 623(a)(1).]
The ADEA differs from Florida law in one significant respect, however, in that the ADEA places minimum and maximum age limits upon the coverage of the act, while Florida's statute contains no such limits. Thus, until January 1, 1979, the prohibitions contained in the ADEA apply only to persons between the ages of 40 and 65. See 29 U.S.C. § 631. With the enactment of Pub.L. No.95-256, supra, however, Congress has amended the act to raise the upper age limit to 70, subject to certain exceptions, effective January 1, 1979.
Turning now to a consideration of the provisions of the ADEA which are relevant to your inquiry, I note that the act, like s.112.044, F. S., provides certain exceptions or employer defenses to the anti-discrimination provisions set forth therein. For example, s. 4(f)(1) of the ADEA, provides in terms similar to those contained in s. 112.044(3)(f)1. that the act's prohibitions do not apply where age is a bona fide occupational qualification [BFOQ] reasonably necessary to the operation of the business.29 U.S.C. § 623(f)(1). This section was not affected by the 1978 congressional amendments. However, s. 4(f)(2) of the ADEA has been significantly amended, and now provides as follows (the italicized language indicates the language of the amendment by s. 2 of Pub.L. No. 95-256):
It shall not be unlawful for an employer . . .
 (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension or insurance plan, which is not a subterfuge to evade the purposes of this Act, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual [between the ages of 40 and 65; as of January 1, 1979, between the ages of 40 and 70] because of the age of such individual. [29 U.S.C. § 623(f)(s), as amended; emphasis supplied.]
From an examination of the above-cited statute, it is evident that federal law now expressly prohibits mandatory retirement of persons under the age of 65, even if such retirement is permitted or required as part of a bona fide pension plan unless the employer can show that age is a BFOQ which requires separation at an earlier date. See 29 U.S.C. § 623(f)(1); and see also Senate Report No. 95-493, 4 U.S. Code Cong. Admin. News 976, 985 (1978). Moreover, as of January 1, 1979, federal law will prohibit mandatory retirement of persons under 70 years of age unless the employer can show that age is a BFOQ. Involuntary retirement of persons between the ages of 65 and 70 will also be prohibited unless:
 1. The employee is serving under a contract of unlimited tenure at an institution of higher education, s. 12(d) of the ADEA, 29 U.S.C. § 631, as amended; or
 2. The employee has, for a two-year period immediately prior to retirement, been `employed in a bona fide executive or high policy making position, if such employee is entitled to an immediate nonforfeitable annual retirement benefit from a pension, profit-sharing, savings, or deferred compensation plan or any combination of such plans, of the employer of such employee, which equals in the aggregate, at least $27,000,' s. 12(c) of the ADEA, s. 29 U.S.C. § 631, as amended; or
 3. If such retirement is required or permitted by bona fide employee benefit plans or seniority systems provided by collective bargaining agreements in effect on September 1, 1977, in which case the effective date of the prohibitions is the termination date of the collective bargaining agreement or January 1, 1980, whichever occurs first. [Section 2(b) of Pub.L. No. 95-256.]
It should be noted that to the extent that s. 112.044(3)(f)2., F. S., permits the terms of pension or other retirement plans to require mandatory retirement of employees who are less than 65 (and after January 1, 1979, less than 70), it is in direct conflict with federal law. Under such circumstances, while federal and state laws should always, to the extent reasonably possible, be interpreted in such a way as to avoid conflict in their application, the supremacy clause demands, where such conflict isunavailable through reasonable interpretation, that federal law stand supreme. Florida Lime and Avocado Growers, Inc. v. Paul,373 U.S. 132, 142-143 (1963); Atchison, T. S.F.R. Co. v. Railroad Comm., 283 U.S. 380 (1930); Townsend v. Yeomans, 301 U.S. 441
(1937). It should be noted, however, that the ADEA protects only
those employees who are between the ages of 40 and 65 (40 and 70 on January 1, 1979). Thus, municipal employees who are age 65 (before January 1, 1979) or age 70 (on or after January 1, 1979) or older would still be covered by state law on the subject. Therefore, the prohibitions and exceptions set out in s.112.044(3) would continue to be applicable to such employees. Cf. Ch. 78-49, Laws of Florida, which amended s. 13.261(8)(b), F. S., to permit involuntary retirement in the private employment sector pursuant to bona fide employee benefit plans to the extent that such involuntary retirement is otherwise permitted by the ADEA, as amended by the ADEA Amendments of 1978.
In light of the foregoing discussion, therefore, I have no other alternative but to advise you that federal law currently does not permit an employer (whether public or private) to require employees to retire at age 60 (in the absence of a BFOQ) solely because of their age, even if such a mandatory retirement provision is part of a bona fide pension plan. In addition, as of January 1, 1979, it will no longer be lawful for the city, even where so stipulated under a pension or retirement plan for municipal employees, to require all employees to retire between ages 65 and 70, in the absence of a BFOQ based on age, or a showing that an employee is in an executive or high policymaking position with the retirement benefits specified in s. 12(c) of the ADEA, as amended.
However, it should be noted that both federal and state law permit the retirement or discharge of an employee `for good cause.' See
s. 112.044(3)(f)3.; 29 U.S.C. § 623(f)(3). In other words, an employee may be involuntarily discharged even though he is under 65 (before January 1, 1979) or 70 (after January 1, 1979), provided that his age is not the reason for the discharge. It also should be emphasized that the requirement that municipal policemen and firemen retire at age 65 would in all probability remain unaffected by the changes in the ADEA, since age would almost certainly be considered a BFOQ for such occupations.
Prepared by: Patricia R. Gleason, Assistant Attorney General