Leslie P. McCROAN, Plaintiff,

v.

Mary K. BAILEY, Individually and as Manager, Augusta College Bookstore; Alex S. Mura, Individually, and as Director of Personnel, Augusta College; Joseph Mele, Individually, and Dean for Business and Finance, Augusta College; and Board of Regents of the University System of Georgia d/b/a Augusta College, Defendants.

Civ. A. No. CV181–247.

United States District Court,
S. D. Georgia,
Augusta Division.

June 29, 1982.

Charles L. Wilkinson, III, Augusta, Ga., for plaintiff.

Alfred L. Evans, Jr., Sr. Asst. Atty. Gen., Atlanta, Ga., for defendants.

## ORDER

BOWEN, District Judge.

Leslie P. McCroan, plaintiff in this action, is a part-time cashier at the Augusta College Bookstore at Augusta College. She has held this position for approximately thirteen years, though prior to July 1, 1980, the position was full-time. It is the plaintiff's contention that the change in the cashier's position, along with the concomitant reduction in wages and benefits, is part of an overall effort by the defendants to force her into retirement due solely to her age. She is presently sixty-eight years old. From her complaint, brought in two counts, the following allegations are presented. They will be taken as true for present purposes only.

At the time plaintiff turned sixty-five, she was asked by defendant Mary K. Bailey, manager of the bookstore and plaintiff's immediate supervisor, about her retirement plans. Plaintiff responded she intended to work as long as possible until she had accumulated fifteen years of service with the university system.[1] From that time on, defendant Bailey has conducted a campaign design to force the plaintiff to leave her job. The campaign has consisted of accusations of theft, incompetence, slowness, culpability for cash register errors, unfair work evaluations and ostracism by fellow employees encouraged by Bailey.

In June of 1980 plaintiff was informed by Mary Bailey that the cashier's position was being downgraded from full-time to part-time, ostensibly for budgetary reasons. Three students, however, were hired on a part-time basis to work the times no longer scheduled for the plaintiff. Moreover, on July 1, 1980, there were approximately six full-time positions at the bookstore with plaintiff enjoying seniority over all but one. Her position was the only position changed.

The effect of Bailey's actions was exacerbated by the lack of action on the parts of defendants Alex S. Mura and Joseph Mele. Defendant Mura is the director of personnel at Augusta College and is its equal employment compliance officer. He is charged with the responsibility of insuring adherence to laws proscribing employment discrimination. He was approached by plaintiff who filed a grievance with him over

---

1. The bookstore is a part of Augusta College which is a four-year state institution and a part of the university system of Georgia under the control and direction of the Board of Regents.

Bailey's conduct. Mura, however, failed to take any corrective measures although it was his duty and responsibility to prevent the continuation of any discriminatory behavior. As for Joseph Mele, who as Comptroller and Dean for Business and Finance at Augusta College is responsible for the operation of the bookstore, it is alleged he was aware of Bailey's conduct and failed to take corrective action although such action was within the authority of his office.

Thus, it is plaintiff's contention that she has been discriminated against on the basis of her age alone. Her complaint is brought in two counts based on these actions. Count I alleges the defendants violated the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* Count II is brought pursuant to 42 U.S.C. § 1983 against all defendants.[2]

Three motions to dismiss filed by the defendants are before the Court. The first motion is brought by all the defendants and seeks dismissal of the complaint on the ground that the complaint as a whole, and each count taken individually, fails to state a claim upon which relief can be granted. The second motion to dismiss, brought by defendants Bailey, Mura, and Mele, is directed at Count I and is predicated upon two grounds: a) the Court is without jurisdiction over the person of these particular defendants, and b) it fails to state a claim against them upon which relief can be granted. The third motion is raised by defendant Board of Regents (the Board). The Board seeks its dismissal from Count II of the complaint on the grounds that the Court is without subject-matter jurisdiction as to this defendant by virtue of the eleventh amendment of the United States Constitution and Count II fails to state a claim against the Board upon which relief can be granted.

Each motion shall be reviewed separately in their order of appearance.

**FIRST MOTION**

The defendants' first motion asserts the complaint does not state a claim for relief. The principal argument in support of this position is the application of the Age Discrimination in Employment Act of 1967, as amended (ADEA), 29 U.S.C. § 621 *et seq.*, the foundational statute for plaintiff's complaint, to the state and its agencies is inconsistent with the limitations and concepts of federalism embodied in the Tenth and Eleventh Amendments to the United States Constitution. Defendants also argue the no claim for relief is stated by the invocation of 42 U.S.C. § 1983 in Count II inasmuch as section 1983 depends upon the existence of a cause of action under the ADEA for its viability and since the ADEA is inapplicable, no jurisdictional basis for a section 1983 action exists. Moreover, even if the ADEA did provide a cause of action in this case, the section 1983 claim would still fail as the ADEA provides for its own remedy.

Before addressing the arguments raised by the parties with regard to this motion, a review of pertinent provisions of the ADEA cited by the plaintiff in the complaint will aid in the understanding of the positions of the parties.

The congressional purpose behind the passage of the ADEA was to "promote employment of older persons based on their ability rather than age." The Congress recognized that the existence of age discrimination in employment "burdens commerce and the free flow of goods in commerce." 29 U.S.C. § 621(a)(4), (b); *See* [1967] U.S. Code Cong. & Ad.News 2213 *et seq.* By way of this act, Congress prohibited certain practices of age discrimination. 29 U.S.C. § 623. Under section 623(a), the relevant provision in this case, it is unlawful for an employer:

1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with re-

---

**2.** The complaint alleges that the defendants Bailey, Mura and Mele are employees of the Board of Regents thereby rendering the Board a proper defendant as to both counts. Under Count I, it is alleged that the Board of Regents is an "employer" as that term is used in 29 U.S.C. 630(b) of the ADEA. With respect to the section 1983 action in Count II, it is asserted that the Board is a "person" for the purposes of 42 U.S.C. § 1983.

spect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise affect his status as an employee, because of such individual's age; or

3) to reduce the wage rate of any employee in order to comply with this chapter.

An employer, however, is not totally fettered from exercising control over employment related policies and activities. Section 623(f) provides an escape from the prohibitions of the ADEA under circumstances where age is a bona fide occupational qualification or where actions taken with regard to a person's employment are based on reasonable factors other than age. Employers may also observe the terms of a bona fide seniority system or benefit plan so long as such a plan is not a device for circumventing the purposes and proscriptions of the ADEA. The employer is allowed to discharge or discipline an employee when good cause exists.

The ADEA defines an "employer" as a person who is engaged in an industry affecting commerce and employs twenty or more employees for each working day over a prescribed period of time. The term also includes ". . . (1) any agent of such person, and (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State . . ." 29 U.S.C. § 630(b).

The scope of the ADEA is limited by age. Section 631 provides that the protected class shall consist of individuals who are at least forty years of age but less than seventy years of age. 29 U.S.C. § 631(a) (1981 Supp.).

Under the ADEA, the Secretary of Labor is empowered to make investigations and institute civil actions for violations of the act. 29 U.S.C. § 626. Private individuals may also bring civil actions. Before this right can be exercised, the aggrieved citizen must file, sixty days prior to bringing suit, a charge of discrimination with the Secretary of Labor. If the Secretary first initiates a suit, an individual's right to sue is then foreclosed. 29 U.S.C. § 626(c), (d) (1981 Supp.). A potential litigant is not limited to federal court but, under section 626(c), may file the case in state court. Thus, state and federal courts enjoy concurrent jurisdiction over ADEA suits.

Defendants assert that the ADEA and its extension to the states was an exercise of congressional authority under the commerce clause of the United States Constitution.[3] Defendants argue that the extension of the ADEA to the States was beyond the commerce clause power of congress under the limiting principles of federalism embodied in the tenth amendment to the federal constitution.[4] In support of this proposition, defendants rely on *National League of Cities, et al. v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). On the other hand, plaintiff argues that the ADEA is grounded upon section 5 of the fourteenth amendment of the federal constitution which is not limited by the tenth amendment. Because the Court finds that the ADEA's extension to the states was a proper exercise of commerce clause authority within the ambit of the holding in *National League*, it is unnecessary to address the issue of whether the ADEA is a fourteenth amendment, section 5 exercise of congressional power.[5]

---

**3.** U.S.Const. Art. 1, 8, Cl. 3. This clause, one of the delegated powers, grants congress the power to regulate commerce among the states.

**4.** The tenth amendment provides "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

**5.** The plaintiff's position, however, enjoys considerable support. *E.g., Arritt v. Grisell*, 567 F.2d 1267 (4th Cir. 1977); *Johnson v. Mayor and City Council of Baltimore*, 515 F.Supp. 1287 (D.Maryland 1981); *Marshall v. Delaware River and Bay Authority*, 471 F.Supp. 886 (D.Delaware 1979); *Remmick v. Barnes County*, 435 F.Supp. 914 (D.N.D.1977); *Usery v. Board of Education of Salt Lake City*, 421 F.Supp. 718 (D.Utah 1976).

*National League of Cities et al. v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), involved an attack upon the 1974 amendments to the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.,* by which Congress, exercising its commerce clause authority, extended the act's minimum wage and maximum hour coverage provisions to include the States.[6] Appellants in that case argued that the 1974 amendments infringed upon the constitutional prohibition of a congressional exercise of the commerce power that interfered with the states' operation in the traditional areas of state governmental functions.

Justice Rehnquist, writing for the majority, acknowledged that the commerce clause is a grant of plenary authority to Congress, but also recognized that there exist constitutional limitations upon the exercise of that plenary authority. 426 U.S. at 840–42, 96 S.Ct. at 2468–70. The particular limitation applicable in the case before the Court was found in the tenth amendment which declared "the constitutional policy that Congress may not exercise power in a fashion that impairs the states' integrity or their ability to function effectively in a federal system." 426 U.S. at 843, 96 S.Ct. at 2470 (quoting *Fry v. United States,* 421 U.S. 542, 547 n.7, 95 S.Ct. 1792, 1795 n.7, 44 L.Ed.2d 363 (1975)).

Thus, the question presented to the Court was whether the power to structure the wage and hour terms of employment by the States were " 'functions essential to separate and independent existence' " precluding congressional legislative interference. 426 U.S. at 845–46, 96 S.Ct. at 2471–72. The Court found that determination of state employment wage and hour conditions was an attribute of state sovereignty essential to the carrying out of traditional governmental functions. The direct displacement of the states' decisional prerogative in this regard by the amendments would undermine the states' ability to function as separate and independent entities within the federal system. The amendments would impose upon the states and their subdivisions onerous financial burdens resulting in a curtailment or lessening of quality of essential and traditional state governmental functions. 426 U.S. at 846–51, 96 S.Ct. at 2471–74. Accordingly, the Court held that "insofar as the challenged amendments operate to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions, they are not within the authority granted Congress by Art. I, § 8, cl. 3." 426 U.S. at 852, 96 S.Ct. at 2474.

■ Defendants, in the case at bar, take the same position as that of the appellants in *National League,* that is, the 1974 amendments extending the ADEA to the states in an overstepping of congressional commerce clause authority. Under *National League* and, more recently, *Hodel v. Virginia Surface Mining & Reclamation Association, Inc., et al.,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), a three part test must be satisfied, as to each part, before a claim of an invalid exercise of commerce clause power can succeed. As delineated by *Hodel,* the three requirements are:

1) it must be shown that the challenged statute regulates the "States as States";

2) the federal regulation must address matters that are indisputably "attributes of state sovereignty"; and

3) it must be apparent that the states' compliance with the federal law would directly impair their ability "to structure integral operations in areas of traditional functions."

452 U.S. at 287–288, 101 S.Ct. at 2366 (1981).

■ Applying this test to the ADEA in the context of this case shows the defendants' claim fails to satisfy the test. The first part is satisfied since it is unquestionable the ADEA applies to the "States as States." 29 U.S.C. § 630(b). The ADEA

---

6. In the same legislative breath Congress also extended the provisions of the ADEA to the states, which extension is under assault today by the defendants. Pub.L. 93-259 § 28(a)(1), (2) (1974).

also addresses areas that are "attributes of state sovereignty," that is, the state educational system. *Usery v. Board of Education of Salt Lake City*, 421 F.Supp. 718 (D.Utah 1976). It is the third component of the test, the impairing of ability to structure integral operations, that goes unfulfilled.

The Court in *National League* found the application of the FLSA wage and hour provisions to the states would effectively deny the states any choice as to the manner in which they structured the operations of essential services that are a part of state government. The FLSA amendments would impose oppressive financial burdens on the states that would lessen their independent existence in the federal system. The extension of the ADEA, however, does not adumbrate the occurrence of similar evils.

Under the ADEA, the states are not prevented from structuring the terms and conditions of employment except for the consideration of age. The states may still set hours, wages, duties, educational and physical requirements and so on, without violating the ADEA. Moreover, the proscriptions on age discrimination are not absolute but yield when reasonably necessary for the performance of a job. *See* 29 U.S.C. § 623(f). The logic behind the ADEA appears irrefutable in that a person's age should be of no consequence so long as it does not affect that person's *job performance*. To deny an otherwise qualified person employment solely on the basis of age, where age is not a qualifying factor, is an arbitrary and capricious act. That a state, because it is a state, may engage in arbitrary discrimination having no rational relation to the performance of its governmental duties, is an untenable proposition. The holding in *National League* proscribed direct displacement of state power. Here, however, it appears the effect of the ADEA is only indirect.

Another distinction that might be found between *National League* and this case is, unlike the FLSA amendments, the ADEA extension does not foreshadow a debilitating financial burden imposed on the States

as a result of compliance with the act thereby impairing the states. In fact, an opposite result is reasonably foreseeable because productive citizens contribute to a state's well-being rather than burden it.

In light of these distinctions, it is clear that the defendants' claim fails to satisfy the *National League-Hodel* test. Some courts, however, have construed *National League* to apply a balancing approach when assessing the validity of the displacement of state power by congressional action. Even using this approach, the conclusion is the same as will be shown below.

In *Usery v. Board of Education of Salt Lake City*, 421 F.Supp. 718 (D.Utah 1976), a case dealing with the same constitutional assailment upon the ADEA as made here, the district court construed *National League* as requiring a balancing of state and federal interests in determining the constitutional legitimacy of federal interference with state governmental functioning *vis-a-vis* the tenth amendment. 421 F.Supp. at 720. The court found that the effect of the ADEA upon the states' operations was minimal. Furthermore, the Court held the federal interest in protecting citizens from arbitrary employment discrimination far outweighed any state interest in engaging in such activity. 421 F.Supp. at 720.

The Fifth Circuit, in *Peel v. Florida Department of Transportation*, 600 F.2d 1070 (5th Cir. 1979), also recognized this balancing approach. Although *Peel* did not concern the issue of the ADEA's application to the states, the Court of Appeals, in construing *National League*, relied upon an equally applicable principle when it stated:

> Where the legitimate exercise of a power delegated to Congress outweighs the interference with the state's self-determination in providing its essential public services, the tenth amendment is no bar to congressional action.

600 F.2d at 1083.

The Court is in agreement with the rationale of *Usery* which holds that the federal interest in eliminating discrimination significantly outweighs a state's interest to

discriminate under the guise of structuring operations in traditional governmental areas thereby permitting federal intrusion without contravening the tenth amendment. Accordingly, under this balancing approach, as well as the *National League-Hodel* tripartite test, the ADEA extension is a legitimate exercise of congressional authority.

There is another matter relative to the first motion that requires attention. Hurdling the tenth amendment barrier does not usher the plaintiff into court. She must overcome another obstacle in the form of the eleventh amendment to the United States Constitution.

■ The eleventh amendment states:

The Judicial power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State.[7]

The immunity bestowed upon a state by the eleventh amendment can be waived. However, the authorization by Congress of a federal cause of action by a private citizen against a state does not constitute waiver. *Parden v. Terminal R. Co.*, 377 U.S. 184, 186, 84 S.Ct. 1207, 1209, 12 L.Ed.2d 233 (1964). Instead, waiver by a state must be " 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 622 (1974) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)).

■ A defendant in this case is a department of the State of Georgia, the Board of Regents, Ga.Code Ann. § 32–101 (1980 Rev.), and, therefore, is a suit against the state. *Edelman v. Jordan*, 415 U.S. at 663, 94 S.Ct. at 1355–56; *United Carolina Bank v. Board of Regents of Stephen F. Austin State University, et al.*, 665 F.2d 553 (5th

Cir. 1982). The question then is whether the State of Georgia has waived its eleventh amendment immunity. A recent decision of the Supreme Court of Georgia expresses in clear and convincing language that Georgia, acting through the Board of Regents, has waived immunity.

*McCafferty et al. v. Medical College of Georgia et al.*, 249 Ga. 62, 287 S.E.2d 171 (1982), was a suit brought in superior court against the Board of Regents of the University System of Georgia for medical malpractice arising out of an incident occurring at the teaching hospital of the Medical College of Georgia, a part of the university system. The Board sought to interpose the defense of sovereign immunity by virtue of its status as a department of the State of Georgia. The trial court dismissed the suit on that ground and the case was appealed. The supreme court traced the evolution of the Board from its beginnings in 1931. The Board superseded other boards managing various aspects of the state university system and assumed their powers and responsibilities. One of the powers acquired by the Board was the power *to sue and be sued* in any court of law or equity. 249 Ga. at 65, 287 S.E.2d 171 (1982). The Board, along with its powers and duties, achieved constitutional status. Accordingly, the supreme court held that the Board, because of the language authorizing it to sue or be sued, did not enjoy sovereign immunity, and a legislative attempt to grant it was void as being in conflict with the Georgia Constitution. 249 Ga. at 69, 287 S.E.2d 171 (1982).

Attempting to circumvent *McCafferty*, defendants assert that McCafferty did not waive eleventh amendment immunity and cite, *inter alia, United Carolina Bank v. Board of Regents, et al.*, 665 F.2d 553 (5th Cir. 1982) as support. The Fifth Circuit, in that case, held that a Texas statute waiving the sovereign immunity of the defendant Board applied to suits brought in state court and do not constitute a waiver of eleventh amendment immunity. While ac-

---

7. Although the amendment does not by its terms prohibit federal suits brought against a state by its own citizens, such an immunity has been judicially recognized. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

knowledging that a waiver of immunity of suit in state court does not necessarily waive eleventh amendment protections, *Jagnandan v. Giles*, 538 F.2d 1166 (5th Cir. 1976), the waiver language found in *McCafferty* to be part of the Board's powers and duties convinces the Court that federal immunity was waived by the State of Georgia. Support for this conclusion is found in *United Carolina Bank* which recognized the same result of substantially similar language in the case of *Soni v. Board of Trustees of the University of Tennessee*, 513 F.2d 347 (6th Cir. 1975). 665 F.2d at 559. The Court of Appeals for the Sixth Circuit was faced with the question of whether the Board of Trustees was protected by the eleventh amendment. The Court found that the University of Tennessee was endowed with the power to sue and be sued "in any court of law or equity in this State or elsewhere." 513 F.2d at 352. The Court found no indication that this broad, general language limited the waiver of immunity to state courts.

The similarity between the waiver language of *Soni* and that of *McCafferty* cannot be ignored. Any semantical difference that might exist is insignificant and does not affect the construction of the language used. The sweeping, general language of the Board's power to sue and be sued in any court does not, except by a strained reading, yield to any interpretation other than that of complete waiver of immunity from suit in the state and federal courts. Accordingly, having found the *Edelman* standard for waiver to have been met, the plaintiff is not barred by the eleventh amendment for pursuing her claim in federal court.

Count 2 alleges a section 1983 cause of action predicated upon plaintiff's right, as secured by the ADEA, of freedom from age discrimination in employment. Defendants' first motion to dismiss attacks this count on two grounds. First, the ADEA does not provide a right which, if violated, may be vindicated in a section 1983 action and, secondly, a section is barred since the ADEA provides its remedy for violations.

■■ Addressing the first ground, the question is does section 1983 encompass the rights secured under the ADEA? It is well established that to state a cause of action under section 1983, an essential allegation is the deprivation of a right secured by the "Constitution and laws" of the United States.[8] This allegation is necessary to the viability of a section 1983 action inasmuch as section 1983 is a remedial statute and does not provide any substantive rights. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979). Thus, the narrow issue, in this case, is whether the phrase "and laws" found in section 1983 refers only to those laws conferring federal civil rights or embraces any federal statutory right. This question was answered by the Supreme Court in the case of *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Faced with the issue of whether a right provided by the Social Security Act was within the ambit of the phrase "and laws" as used in section 1983, the court construed that language as encompassing all violations of federal statutory law. The court stated, "Even were the language ambiguous, however, any doubt as to its meaning has been resolved by our several cases suggesting, explicitly or implicitly, that the section 1983 remedy broadly encompasses violations of federal statutory as well as constitutional law." 448 U.S. at 4, 100 S.Ct. at 2504.

From the court's holding in *Thiboutot*, it would appear that the ADEA is enforceable via a section 1983 action. Under *Thiboutot*, the fact that the ADEA contains its own remedy is irrelevant. *Thiboutot's* expan-

8. 42 U.S.C. § 1983 states in pertinent part: Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

sive construction of section 1983 was, however, qualified somewhat by the later case of *Pennhurst State School v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). The Court recognized that *Thiboutot* permitted the enforcement of federal statutory rights by section 1983, but went on to find that Congress could limit the availability of this course of action. The court adopted Justice Powell's suggestion, expressed in his dissent to *Thiboutot*, 448 U.S. at 22, n.11, 100 S.Ct. at 2513, n.11, that a section 1983 action for the enforcement of federal statutory right is unavailable where the "governing statute provides an exclusive remedy for violations of its terms." 451 U.S. at 28, 101 S.Ct. at 1545. Thus, the true dispositive issue in the case at bar regarding Count 2 is whether the remedy provided by the ADEA is exclusive, thereby removing it from the *Thiboutot* umbrella. A review of the enforcement and remedial provisions of the ADEA is, therefore, required.

Under the ADEA, in 29 U.S.C. § 626, an aggrieved person may institute suit to enforce the provisions of the ADEA. § 626(c)(1) (1981 Supp.). The right to bring an action under this section is not absolute but is contingent upon two other factors. Before a person may file his suit, a charge of discrimination must be filed with the Secretary of Labor sixty days prior to filing suit.[9] § 626(d) (1981 Supp.). Moreover, if the Secretary files suit first, the right to sue provided by section 626(c)(1) is foreclosed. § 626(c) (1981 Supp.). The purpose behind the sixty-day deferral is to allow the Secretary to notify all parties charged with discrimination of the complaint and then to attempt to resolve the dispute by instigating informal methods of conciliation, con-

ference, and persuasion as required by section 626(d) (1981 Supp.). The Secretary is bound to undertake these efforts even before he may commence an action. § 626(b).

With these provisions in mind, the importance of the informal settling of disputes under the ADEA is significant. Clearly, the Secretary role is essential to effectuating the ADEA's policies. *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195, 1197–98 (5th Cir. 1975). Because of the Secretary's role, primary emphasis is placed on the resolution of disputes by informal methods rather than on formal litigation, which is discouraged. *Marshall v. Sun Oil Company of Pennsylvania*, 592 F.2d 563, 565 (10th Cir. 1979); *Dean v. American Security Insurance Co.*, 559 F.2d 1036, 1038 (5th Cir. 1977). If, however, formal litigation must ensue, actions brought by the Secretary are preferred to those brought by private litigants. *Dean*, at 1038; *Rogers v. Exxon Research and Engineering Company*, 550 F.2d 834, 841 (3rd Cir. 1977).

The inescapable conclusion that is drawn from the foregoing is that if other modes of enforcement were available to the private litigant, the congressional scheme behind ADEA enforcement could easily be thwarted. An impatient plaintiff might unilaterally dispense with the informal negotiations contemplated by Congress, needlessly casting all concerned into costly litigation. Congress did not intend to allow a plaintiff to bypass the statutory scheme clearly embodied in the language of the ADEA. The only reasonable construction of the Act is that the statute's remedy is exclusive.

The determination of the remedy as exclusive removes the ADEA from the array of rights enforceable by section 1983.[10] Ac-

---

**9.** Originally, the Secretary of Labor was vested with the enforcement authority under the ADEA, §§ 625, 626. Under section 2 of Reorganization Plan No. 1 of 1978, 43 Fed.Reg. 19807, Appendix II to Title 5, United States Code, Government Organization and Employees, this power was transferred to the Equal Employment Opportunity Commission. For the sake of clarity and conforming to the language of the ADEA, the court will continue to refer to the "Secretary" as the enforcing authority unless circumstances require otherwise.

**10.** For an analogous situation involving the enforcement of Title VII, 42 U.S.C. 2000e in an action brought under 42 U.S.C. § 1985 *see Great American Federal Savings and Loan Assoc. v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), in which the Supreme Court held such an action was barred because Title VII contained an exclusive remedy.

cordingly, since the ADEA can not be used as a basis for a section 1983 action, Count 2 of the plaintiff's complaint must be dismissed as to all defendants. Bypassing the defendants' second motion to dismiss for the moment, the third motion to dismiss brought by the defendant Board of Regents is moot inasmuch as that motion dealt solely with Count 2 of the complaint.

## SECOND MOTION

The second motion to dismiss is brought by the defendants Bailey, Mura, and Mele and is directed solely at Count I of the complaint. The defendants seek dismissal of this count as it applies to each of them in their individual capacity. They assert two grounds in support of the motion. First, the defendants argue the court is without subject matter jurisdiction over them since an ADEA action can only be brought against an employer, in this case the Board of Regents, a suit against them will not stand since they are merely employees. Secondly, the count should be dismissed for failure to state a claim upon which relief can be granted. As the first ground addresses the power of the court to hear the claim, that ground should be considered first.

■ The defendants' Fed.R.Civ.P. 12(b)(1) ground is based upon an asserted lack of jurisdiction on the face of the complaint. In this context, in resolving this issue the allegations contained in the complaint must be taken as true. *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981). The defendants maintain they are fellow employees of the plaintiff, not employers. Since the ADEA authorizes suits only against the employer, the defendants contend that a cause of action against them individually is not viable.

Section 630 of the ADEA provides the pertinent definitions. Under section 630(b) the term "employer" includes "any agent of such a person and a State or political subdivision . . . and any agency or instrumentality of a State . . . ." The plaintiff argues the defendants are agents of the Board of Regents, the true employer of plaintiff, and

are liable under the ADEA. The defendants point out that section 630(b) refers to the agent of a "person" and not of a state or its instrumentality. The term "person" is defined by section 630(a) as meaning "one or more individuals, partnerships, associations, labor organizations, corporations, business trusts, legal representatives, or any organized groups of persons." Thus the Court is faced with a question of statutory construction in the form of whether a "person" as used in the ADEA includes a state.

■ Of the rules of statutory construction that the Court must apply in divining the intendment of section 630(a), perhaps the most fundamental tenet, is that the first step in construing a statute is to look to the language of the statute itself and ascribe to it the plain meaning of the terms used therein. *Fitzpatrick v. Internal Revenue Service*, 665 F.2d 327 (11th Cir. 1982); *United States v. Anderez*, 661 F.2d 404 (5th Cir. 1981). The definition of "person" found in section 630(a) conspicuously omits states. The definition embodies a limited number of subjects as persons, thus invoking another well settled rule of interpretation. The statutory definition of a term is the controlling definition and generally excludes any other meaning. *Colautti v. Franklin*, 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979); *Conoco, Inc. v. Federal Energy Regulatory Commission*, 622 F.2d 796 (5th Cir. 1980).

■ Applying these principles to the problem before the Court, it appears that the inclusion of the states in section 630(b)'s definition of "employer" was not intended to be incorporated into the term "person" as used in the immediately preceding phrase and as defined in section 630(a). It is not clear why the states are distinguished from the term "person." A possible reason for the distinction is that suit against a state official in his or her official capacity is generally recognized as suit against the state. *Miree v. United States*, 490 F.Supp. 768 (N.D.Ga.1980); *see United Carolina Bank v. Board of Regents*, 665 F.2d 553 (5th Cir. 1982). The authorization of suits

against agents of persons who meet the criteria of an employer under the ADEA may stem from the realization that some employers, such as corporations, can only act through agents. Moreover, the liability for the violation does not rest with the agent but with the employer-principal. Thus, the problem of suing improper parties is avoided, at least in part by relieving the plaintiff from the burden of determining if the corporation he or she works for is, in fact, the employer or if it is actually another corporation that may own the first one.

Inasmuch as the agents referred to in section 630(b) are agents of a "person" as defined in section 630(a), which excludes states, it appears to the Court that the defendants Mura, Bailey and Mele cannot be sued in their individual capacities and are, therefore, not personally liable. It is not completely clear, however, that the defendants do not need to remain in this suit in their official capacities for the purpose of implementing any relief that may be awarded, if any. Therefore, the defendants will be retained as defendants in their official capacities.

As the defendants Mele, Bailey and Mura, in their individual capacities, are not within the class of persons amenable to suit, their motion to dismiss Count 1 is GRANTED. The second ground for dismissal is now moot and will not be addressed.

## SUMMARY

In accordance with the reasons and holdings in this opinion, it is hereby ORDERED that Count 2 of the complaint is DISMISSED as against all defendants. It is FURTHER ORDERED that with respect to defendants Mura, Mele and Bailey in their individual capacities, Count 1 is also DISMISSED.